CITY OF ALCOA, a Municipal Corporation
of Blount County, Tennessee

*v.*

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS
LOCAL UNION 760, A.F.L.-C.I.O., et al.

(*Knoxville,* September Term, 1957.)

Opinion filed December 6, 1957.

JOE VAN DERVEER, Chattanooga, and VAN DERVEER & PARKS, Chattanooga, of counsel, for appellants.

JOE C. GAMBLE, and GODDARD & GAMBLE, Maryville, E. H. RAYSON and R. R. KRAMER, KRAMER, DYE, McNABB & GREENWOOD, Knoxville, of counsel, for appellee.

MR. JUSTICE BURNETT delivered the opinion of the Court.

The question involved in this lawsuit is: Does a union and its members have a right to strike and picket a municipality for whom they work in an effort to compel the municipality to enter into a collective bargaining agreement? The Chancellor answered the question in the negative. An appeal has been seasonably perfected, briefs filed and arguments heard. We now have the matter for determination.

This suit was filed as a result of the members of the captioned union striking and picketing in an effort to compel the City of Alcoa, a municipal corporation, to recognize and bargain with it as the agent of certain of the municipality's employees.

The bill was filed against the union and certain of its representatives and members seeking to enjoin this picketing and patrolling an office of the municipality. This was the office of the electric distribution system which was city property and operated by the city and was at or near the places where the employees of the electric distribution system were performing maintenance work.

The bill also sought to enjoin the union from coercing the City. into recognizing the union as the bargaining agent for these electrical employees.

A temporary injunction was issued and an answer filed. Upon the hearing to dissolve the injunction the answer was amended and the cause was heard on bill and answer. After this hearing the Chancellor entered a permanent injunction in which it was:

"ordered that the defendants, their agent or representatives, may not by acts or otherwise cause, authorize, induce, or engage in a strike against the complainant and may not picket the premises of the complainant in any way. * * *

"It is further Ordered however that in the modification of the injunction the defendants may contact, talk to, negotiate, and bargain with the complainant."

The City of Alcoa is a municipal corporation and a political subdivision of the State of Tennessee. The defendants are the International Brotherhood of Electrical Workers Local Union 760, a labor organization, and certain of its representatives and certain employees of the City who are representative of the class of employees engaged in the strike.

The employees are the employees of the Blount Electric System, a department of the City of Alcoa and the instrumentality through which the City of Alcoa operates a retail electric distribution system. The electric system serves industrial, military and residential properties in the City of Alcoa and a large area surrounding, including the McGhee-Tyson Airport wherein airplanes from all

over the country come and depart. In connection therewith the Federal Government, at the time of this writing, has a squadron of airplanes for the purpose of patrolling the area.

The physical properties of this electric system at one time belonged to a private corporation. During the time that these properties belonged to this private corporation there existed a collective bargaining agreement between this private corporation and a union. Subsequent to the acquiring of this system by the City of Alcoa there had been no bargaining agreement by the City or the electric system with any labor organization.

On June 17, 1957, the defendant union through its agents induced a number of the electric system's employees to engage in a strike. The purpose of this strike was to compel the recognition of the union as the bargaining agent of the employees, to compel the execution of a collective bargaining agreement, and to compel the reinstatement of a laid-off employee.

The strike was accompanied by picketing and patrolling at the office of the electric system and the pickets also followed employees of the system to their places of employment.

■ ■ There are two contentions made, the first of which is that the court erred in taking jurisdiction of the matter because under the doctrine of pre-emption as announced by the Supreme Court of the United States in *Garner v. Teamster's Local Union No. 776*, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, the Chancery Court did not have jurisdiction to determine the questions involved in this controversy; and that under the very recent cases of

*Guss v. Utah Labor Relations Board,* decided by the Supreme Court of the United States on March 25, 1957, 77 S.Ct. 598, 353 U.S. 1, 1 L.Ed.2d 601, and *Amalgamated Meat Cutters, etc., v. Fairlawn Meats, Inc.,* decided the same day and reported in 77 S.Ct. 604, 353 U.S. 20, 1 L.Ed.2d 613, the jurisdiction for the question here involved was with the National Labor Relations Board and not in the State court. It is the contention of the labor union and those likewise situated that the Chancery Court should have held as did the Chancery Court in *Lodge Mfg. Co. v. Gilbert,* 195 Tenn. 403, 260 S.W.2d 154, 156, when this Court said:

"This is strictly within the scope and purview of the Labor Management Relations Act of 1947 (Taft-Hartley) [29 U.S.C.A. sec. 141 et seq.] ; nor has the court any authority to determine whether or not an employer is guilty of an unfair labor practice, or if any strike is lawful or unlawful."

If the National Labor Relations Act, 29 U.S.C.A. sec. 151 et seq. was applicable to the situation here of course corresponding rights and procedures under State law could not be invoked. Insofar as we can find or has been pointed out to us the doctrine of preemption has never been applied in a case where the dispute involves the employer and employee relations of a municipal corporation and municipal employees. The National Labor Relations Act was passed to regulate employer-employee relations of certain private employers and their employees and as we see it not in respect to the employer-employee relations of "any State or political subdivision thereof."

The Congress of the United States in enacting the National Labor Relations Act as amended, has excluded from the operation of this Act municipal corporations such as the City of Alcoa. In the Act the term "employer" is defined in Section 2 of the National Labor Relations Act as amended (29 U.S.C.A. sec. 152(2):

"The term 'employer' * * * shall not include * * * any State or political subdivision * * *".

And in Section 2(3) of said Act the term "employee" is defined as follows (29 U.S.C.A. sec. 152(3):

"The term 'employee' shall not include * * * any individual employed * * * by any other person who is not an employer as herein defined."

Since the Act expressly excludes political subdivisions we can hardly see how this doctrine of pre-emption under any stretch of the imagination or discretion of the labor board could here apply.

In *Nutter v. City of Santa Monica*, 74 Cal.App.2d 292, 168 P.2d 741, 745, that Court in speaking of the propositions we are considering said:

"* * * Congress did not recognize the existence of the right of collective bargaining in public employment and did not consider it necessary to adopt a national policy which would extend into the field of public employment."

Two cases have been cited to use in the brief of the appellees wherein the National Labor Relations Board has definitely recognized the absence of a statutory basis to direct an election by the employees where the employer involved is a municipality or other political

subdivision of a State. Those two cases are: In Matter of New Jersey Turnpike Authority, Case No. 4—RC—2245, decided April 16, 1954, 33 L.R.R.M. 1528, and Matter of City of Anchorage, Alaska, Case No. 19—RC—1300, decided August 17, 1953, 32 L.R.R.M. 1549. It seems in view of this fact if the union and those in the position that it takes herein were to file a petition with the National Labor Relations Board [under the facts of this case] that Board would undoubtedly refuse the action as it did in the two instances above.

The National Labor Relations Act does not apply to the issues involved in the present controversy.

██ We now come to the question whether under the law in this State the union and its employees have a right to strike and picket a municipality or City in this State in an effort to compel the City or municipality to enter into a collective bargaining agreement. First, we in this State where the doctrine of pre-emption is not applicable have the right and duty to enjoin a strike and picketing if such picketing is unlawful and against public policy.

It is argued by the union that this is peaceful picketing and since it is peaceful picketing it cannot be enjoined. It is not the contention of the City that the picketing was violent but it was their position that the strike and picketing here is unlawful and that this being true that picketing may be enjoined because of the illegality of its purpose.

In the recent case of *Pruitt v. Lambert,* 201 Tenn. 291, 298 S.W.2d 795, 798, this Court said:

"It is established that the right is not unqualified and may be forfeited (1) where picketing is accompanied by violence under such circumstances as to be accompanied by violence or mass picketing of such a nature as to justify prohibiting all picketing as in Meadowmoor Dairies case, *Milk Wagon Drivers Union v. Meadowmoor Dairies,* 312 U.S. 287, 61 S.Ct. 552, 85 L.Ed. 836, or (2) *where picketing is for a purpose in violation of statutory of common law principles which are themselves not in violation of the Federal Constitution,* as in *Hughes v. Superior Court,* 339 U.S. 460, 70 S.Ct. 718, 94 L.Ed. 985." (Emphasis ours.) And other cases there cited.

The basis of this suit was that the striking of the employees of the City for the purpose of compelling the City to bargain with them was unlawful and against public policy. It was on this proposition and basis that the Chancellor granted the injunction. There are a number of authorities and reasons to support this proposition. As to why these things are against public policy and unlawful a number of courts have expressed the matter in a different way. The Supreme Court of Connecticut in *Norwalk Teachers Ass'n v. Board of Education,* 138 Conn. 269, 83 A.2d 482, 484, 31 A.L.R.2d 1133, had this to say:

"Under our system, the government is established by and run for all of the people, not for the benefit of any person or group. The profit motive, inherent in the principle of free enterprise, is absent. It should be the aim of every employee of the government to do his or her part to make it function as efficiently and economically as possible. The drastic remedy of the

organized strike to enforce the demands of unions of government employees is in direct contravention of this principle. It has been so regarded by the heads of the executive departments of the states and the nation."

The author then quotes from three former Presidents of the United States including a very forceful one from the late President Franklin D. Roosevelt, wherein he says:

"Particularly, I want to emphasize my conviction that militant tactics have no place in the functions of any organization of Government employees. * * * (a) strike of public employees manifests nothing less than an intent on their part to prevent or obstruct the operations of Government until their demands are satisfied. Such action, looking toward the paralysis of Government by those who have sworn to support it, is unthinkable and intolerable."

The Supreme Court of Oklahoma recently affirmed the granting of an injunction enjoining the strike of the employees against a State owned and operated governmental agency in the case of *International Brotherhood of Electrical Workers, Union 976 v. Grand River Dam Authority*, 1956, Okl.,.292 P.2d 1018.

And again the right of public employees to strike was denied in *City of Los Angeles v. Los Angeles Building & Construction Trades Council*, 94 Cal.App.2d 36, 210 P.2d 305, and the same case again in 1952, 109 Cal.App.2d 81, 240 P.2d 16, 20, wherein that court said:

"Water, light and power are furnished by the city to private citizens, to private commercial enterprises,

and to public offices. It can hardly be argued that such service is not a vital necessity without which neither the city itself nor its citizens could well subsist. It is, indeed, a service involving health, safety and welfare of a vast number of people; one with which neither labor unions nor individuals have a legal right to interfere. That this situation was recognized and considered by the trial court and by the reviewing court on the former appeal seems clear. No valid argument has been here presented which would justify a reversal of that position.''

And again the Supreme Court of Michigan in *City of Detroit v. Division 26, etc., Street, Electric Railway & Motor Coach Employees*, 1952, 332 Mich. 237, 51 N.W.2d 228, 233, strongly supports the conclusion of the Chancellor herein. That Court among other things said in quoting from an Ohio case and adopting what was there said:

'' 'The question is whether or not public employees do have the right to strike. Under the common law,— and there is no question about it so far as this Court is concerned,—there is no right to strike on behalf of public employees, for many reasons, some of which at least, might be paraphrased in the language of several of the decisions, that it is a means of coercing the delegation of the discretion which a public Board or public Body must exercise in its fulfillment of its dutes. * * * (Citing several cases).

'' 'It has been repeatedly stated that it is against public policy for public employees to strike. Many courts have held that a strike by public employees is

against public policy, is unlawful, illegal and may be restrained and enjoined.' '' Citing authorities.

We could cite and quote from other cases contained in the brief and others that we have looked up and read for our own enlightenment, but suffice it to say that in an excellent note on the question in 31 A.L.R. 2d, beginning at page 1142, the annotator on page 1159 makes this very apt comment:

"Although there have been many strikes by public employees, very few of them have reached the courts, or at least, very few have been reported. Usually, temporary restraining orders are granted by the courts, the strikers' demands are met and the strike settled. However, in every case that has been reported, the right of public employees to strike is emphatically denied."

The very forceful argument is made on behalf of the unions and those in that capacity that since the City is acting in its proprietary rather than its governmental capacity in the operation of this electric system that then the same reasons and rules should apply to it as apply to a private individual or a private corporation. We do not think that there is any question but that the City of Alcoa in operation of this electric unit here is operating it in its proprietary or ministerial function rather than in its governmental capacity. *Nashville Electric Service v. Luna,* 185 Tenn. 175, 204 S.W.2d 529.

This was the position that one Justice took, while five took the opposite view in *Miami Water Works Local No. 645 v. City of Miami,* 157 Fla. 445, 26 So.2d 194, 165 A.L.R. 967. In the City of Los Angeles case, *supra,* that

was a case of the employees of the water department of the City. They, too, were operating in a private and proprietary capacity as well as in a public capacity. The two go hand in hand as far as the operation of these things by the City is concerned. Years ago when municipalities first began to encroach upon private domain in operating their electric systems, street railways, waterworks, etc., where they sold water or electricity, etc., in competition with a private individual, the courts very quickly held that the governmental department or the city or what-not, doing so in its private proprietary capacity in these tort cases was liable in tort as the private individual or private corporation would be. In the operation of these things by the cities, that is, their waterworks and various and sundry things of that kind, in addition to the private proprietary or corporate part that they do a greater portion of it is likewise in their governmental capacity. It is necessary to have lights and water and all these things for the health and safety and welfare of the people of the City. Thus when we come to think of the City in this larger capacity, rather than singling out one department from the other, and see that the employees of the City in running this whole department cannot be interfered with by all of them going on strike or stopping or this or that or the other thing at the time because to do so even though a part of the business is in its private capacity this interferes with the City wholly in its public capacity. This being true the rule as applied in the private proprietary tort cases is not and should not be applicable in this type of case. The reverse reasoning is applicable in this type of case to that used where we hold the City liable in tort.

The note to which we referred heretofore in 31 A.L.R. 2d, p. 1149, on this question says this:

"It is generally recognized that all functions performed by public authorities are public, in so far as labor relations between public employers and employees are concerned, and therefore the question whether public authorities are engaging in functions classified as 'governmental' or 'proprietary' is immaterial."

In the City of Los Angeles case, *supra,* that Court said:

"The City, having been lawfully empowered by its charter to furnish water and electricity to its inhabitants, is thereby performing a municipal and public function, irrespective of whether it is acting in a 'proprietary' or 'governmental' capacity."

And too, the Michigan Court in the case which was referred to hereinbefore in City of Detroit, etc., on this question says this in quoting from another Michigan case:

" 'We have recognized that a municipality's operation of a public utility, although it may be a proprietary activity, constitutes engaging in a public enterprise for a public purpose.' "

We feel, after a thorough study of the question, that the strike and picketing as carried on in this suit were unlawful and contrary to the public policy of this State, regardless of the fact that the employees involved were employed in connection with a private proprietary function of the City. It is for these reasons that the judgment and decree of the Chancellor must be affirmed.