Francis T. Murphy, J.
The instant action, which has been joined with numerous other actions pending in this court and in the Civil Court of the City of New York, was instituted to recover for damages allegedly suffered as a result of the recent New York City transit strike. With respect to all the actions, the defendants (hereinafter referred to collectively as ‘the Unions ”) have moved for dismissal of each complaint for legal insufficiency.
The basic and critical objection to all of the complaints in issue here, is, simply, that regardless of the manner in which the causes are pleaded, no cognizable action in law has been stated. Thus, the court is presented with the single, though undeniably crucial, issue of whether the plaintiffs have set forth maintainable causes of action.
The plaintiffs assert virtually identical causes of action. All arise out of the transit strike, which commenced on January 1, 1966. Undoubtedly, the work stoppage left an indelible imprint upon the minds of everyone affected. Without question, the strike had an awesome impact upon the citizenry of this city, and indeed, the country. Yet, for the purposes of this discussion, it is necessary to set forth the purely legal consequences of the strike. This requires a brief recital and dispassionate summary of the parties and events involved.
Prior to January 1, 1966, the members of the Unions were employed by the New York City Transit Authority in the operation of rapid transit subways and buses in this city. Clearly, they were “ public employees ” for the purpose and within the confines of the Condon-Wadlin Act (Civil Service Law, § 108 et seq.). It is uncontested that the strike called by the Unions was totally effective. It is asserted that the strike was.violative of the Condon-Wadlin Act, and was continued in defiance *503 of an injunction issued by this court (New York City Tr. Auth. v. Quill, 48 Misc 2d 940; Gilmartin v. O’Grady, N. Y. L. J., Jan. 18,1966, p. 16, col. 3; see Weinstein v. New York City Tr. Auth., 49 Misc 2d 170). It must also be assumed, for the limited purpose of this motion, that the plaintiffs’ allegations are correct and unassailable insofar as it is claimed that they sustained economic damage by virtue of the paralysis imposed upon the city as a result of the transit stoppage.
The causes of action asserted in the various complaints may be classified as follows:
1. Causes based upon assertions that the Unions ’ actions constituted an intentional violation of a statute (Condon-W adlin Act), thus causing damage to the plaintiffs. Concomitantly, causes are asserted based upon the claim that the strike was in violation of an injunction, and that the resultant damages to plaintiffs are compensable.
2. Causes based upon the prima facie tort concept.
3. Causes based upon the claim that the strike was violative of the Universal Declaration of Human Rights of the United Nations, as stated in the declaration of the United Nations on December 10,1948, article 29.
4. Causes based upon the diminution of stock value in the corporate books.
5. Causes based upon vaguely alleged contractually founded theories.
The constitutionality of the Condon-Wadlin Act, as it was in effect at the time of the strike, has been adjudicated, and of course, is conceded. Violation of the Condon-Wadlin Act and of the injunction orders is assumed for the purposes of this motion. Widespread dislocation of economy, universal inconvenience, and even damage to the plaintiffs are not questioned.
At the outset, it is alleged that the activities of the Unions were undertaken in contravention of the Condon-Wadlin Act, and that the intentional violation thereof gives rise to a claim for damages. It is further alleged that the defendants were aware of the paralysis of public and private activities which would result, and of the irreparable damage, injury and economic loss which would be inflicted upon all of the residents of the city and all persons engaged in gainful employment here. It is charged that there was an intent not only to dishonor the statute but to disobey decrees of the court enjoining strike action. Parenthetically, it is claimed that plaintiffs are within the class of those intended to be protected by the statute.
*504 The consideration of these causes of action involves a determination of whether the plaintiffs, as individuals ór individual business entities, may assert these causes where the statute relied upon does not specifically so provide and as a corollary thereto, whether the actions of the offending Unions in fact constituted a violation of the statute as of the date on which plaintiffs claim to have been injured.
It is clear that not every violation of a statute gives rise to civil liability on the part of the violator. “ There are statutes which are construed as creating no duty of conduct toward the plaintiff. The courts have been careful not to exceed the purpose which they attribute to the legislature. This judicial self-restraint has served as an argument for those who contend that an action cannot be founded upon a duty to another; but there is of course a special reason, in the theory of the separation of powers, for such reluctance to go beyond the Legislative policy ” (Prosser, Torts [2d ed.], p. 154).
No solution to the problem embodied in the above quotation is afforded by the argument advanced by the plaintiffs that the Condon-Wadlin Act was intended to protect “ the people ”, for without a prior determination that the “ people ” are so referred to in an individual, rather than a collective sense, the contention is of no significant value. Plaintiffs’ argument that the alleged wrongful acts were obviously aimed at the individuals who constitute the body politic of this city, overlooks that it was the Union members’ employer, namely, the New York City Transit Authority, which was the professed and most direct target of these actions. This is true eveu though the officials of the Transit Authority and the Transit Authority itself, could be most directly affected only by pressure brought through inconvenience foisted upon the public.
It is inherent, in its defined role, that a labor union must affect third parties in the course of the bargaining process with its ‘ ‘ adversary ’ ’, the employer. ‘ ‘ The principal weapons which the unions have developed are the strike, the boycott and the practice of picketing. These devices are used to force the employer to shut down his plant or business either by depriving him of labor or of customers until compliance with,the demands of the union is made. Contractual relations are, of course, interfered with, deliberately and intentionally by the defendant unions ” (1 Harper & James, Torts, p. 523).
The Unions ’ primary weapon, exclusive of public opinion, is a strike, which action effectively affects the employer’s ability *505 to deal with third parties. Thus, it may he correct for the plaintiffs to argue that the Unions voluntarily chose to disregard the statute, and the injunction too. But at the same time, the Unions may not have been presented with a choice, for the alternative was to abjure in the use of its most substantial, and perhaps only effective weapon. To have adopted the latter scheme would have severely jeopardized the Unions’ ability to bargain effectively.
Language in some cases explicitly supports the view that * ‘ A wilful interference with [the employer’s] * * * business without the justification normally flowing from a lawful strike is actionable and warrants a judgment for damages ” (Louisville & Nashville R. R. Co. v. Brown, 252 F. 2d 149, 156, cert, den. 356 U. S. 949). Unions would be liable in damages unless a “ legal privilege affords them immunity ” (1 Harper & James, Torts, p. 523). In the Restatement, Torts (vol. 4, § 775) it is stated: “ Workers are privileged intentionally to cause harm to another by concerted action if the object and the means of their concerted action are proper; they are subject to liability to the other for harm so caused if either the object or the means of their concerted action is improper. ’ ’ (Accord, Dangel & Shriber, Labor Unions, § 289).
Here, the objectives of the strike — to obtain higher wages, better working conditions, etc.— may not be deemed improper. The means used — a strike — may not be classified as improper per se, but only improper by virtue of the statute and the court ordered injunction.
The plaintiffs’ causes of action based upon the alleged violations of the Condon-Wadlin Act by the Unions, are not tenable. Even a cursory examination of the statute would reveal that a cause of action is not granted to the plaintiffs under the Condon-Wadlin Act, because of an illegal strike. The statute does not afford a right of action to a specified class.
Section 108 of the Civil Service Law [Condon-Wadlin Act] provides, in part:
, “ 2. Prohibition against strikes. No person holding * * * employment in the * * * service of any authority, commission or board * * * shall strike.
* * *
“ 4. Termination of employment. Notwithstanding any other provision of law, any public employee who violates the provisions of this section shall thereby abandon and terminate his appointment or employment and shall no longer hold such posi *506 tion, or be entitled to any of the rights or emoluments thereof, except if appointed or reappointed as hereinafter provided.”*
No duty is created thereby save to honor the command. While penal consequence is included, it does not provide for any private remedial or damage action for injuries resulting from violation. “ A statute ‘ creates ’ no liability unless it discloses an intention express or implied that from disregard of a statutory command a liability for resultant damages shall arise ‘ which would not exist but for the statute.’ ” (Schmidt v. Merchants Despatch Transp. Co., 270 N. Y. 287, 305 [1936].) With respect to whether a cause of action is created by implication, the court there stated: ‘ That depends, at least in great measure, upon whether the duty is imposed for the special benefit of a particular group or class of persons. Only in such case can it be said that the statute creates a liability per se. When the statute merely defines, in the interest of the general public, the degree of care which shall be exercised under specific circumstances, it does not£ create ’ a new liability
It is needless to repeat what was the known and perhaps intended result of the strike action, but to halt it was the function of the New York City Transit Authority, possessing the right correlative to the defendants’ duty by seeking and securing injunctive relief, which it did.
It is clear that there is an absence, within the statute, of the existence of any remedial actions enuring to plaintiffs.
The New York State Legislature, by special act, immunized the strikers against the enforcement of the penalties. If there was any determination to accomplish beyond what the special act provides, it cannot be doubted that the Legislature would have done so. The Legislature did not act although the occasion was ripe. The failure to act must be regarded as an expression of public policy. The absence of remedial action in favor of the general public before Condon-Wadlin, the failure of Condon-Wadlin to so provide expressly or by implication, and the failure to so provide by the special act lead inexorably to the conclusion that the plaintiffs are without any cognizable action at law.
*507 Plaintiffs next assert that a cause of action arises out of the unlawful strike action, founded upon the theory of prima facie tort. It is urged that the Unions’ actions, effected in disregard of the probable consequences of such acts and the likelihood of injury to others, constituted a breach of a duty resulting in harm to plaintiffs. The consideration thereof necessarily depends upon whether a duty exists, and if so, to whom that duty is owed.
To be sure, the plaintiffs were not in a direct contractual relationship with defendants. At most, they were third-party beneficiaries of the contract that existed between defendants and the Transit Authority as employer. Rights are not abstractions but exist only cor relatively with duties. Everyone who has been damaged by an interruption in the expected tenor of his life does not have a cause of action. The law demands that * * * the damaged plaintiff be able to point the finger of responsibility at a defendant owing, not a general duty to society, but a specific duty to him ” (Kalina v. General Hosp. of City of Syracuse, 31 Misc 2d 18, 19, affd. 18 A D 2d 757 [4th Dept., 1962], affd. 13 N Y 2d 1023).
In an action similar to the case at bar involving a strike illegal under section 303 of the Labor Management Relations Act of 1947 (U. S. Code, tit. 29, § 187); United Mine Workers v. Osborne Mining Co. (279 F. 2d 716 [1960], cert. den. 364 U. S. 881), a claim of damage was asserted in favor of the plaintiff’s sales agency, Love and Amos. The agency sought recovery based upon the business lost as a result of the defendant Union’s illegal strike. "While the agency was denied recovery, the plaintiff employer’s suit for damages was sustained. It should be noted, moreover, that in the Osborne case, specific statutory authority for suits was provided within the Labor Management Relations Act (§ 303, right of action for whoever shall be injured in his business or property”). The court stated (p.729):
‘‘ In the present case, unlike the cited cases, Osborne was not a party to any conspiracy nor is there any claim that Osborne committed any wrong of any kind against Love & Amos. The theory of the complaint of Love & Amos against U. M. W. is that U. M. "W. by its secondary boycotts destroyed Osborne’s business and in consequence thereof Love & Amos were deprived of commissions which it otherwise would have earned under its contract with Osborne. In other words, U. M. W.’s violation of the federal law destroyed Osborne and Love & Amos were injured because of its contractual relations with Osborne.
*508 * * #
“ This damage is incidental and too remote for recovery under federal law.
* * *
“ The failure of Love & Amos to recover here is not attributable to lack of supporting evidence. It was because it never had and could not assert any federally recognized cause of action or ground for recovery ”.
The plaintiffs argue that Osborne, and other similar cases upon which defendants rely, involved actions instituted against private employers and private employees, while here, the strikers were public employees and the employer an agency of government performing á governmental function. In addition, plaintiffs assert that the damage claimed in Osborne was incidental and direct, while in the instant matter, the damage was intended and direct. These finely drawn distinctions are without legal basis. Whether or not a cause of action arises out of unlawful strike action does not rest upon the nomenclature' attached to the parties, to wit, public or private. Nor does the instant case involve unlawful activity directed immediately and pointedly against the plaintiffs (cf. Gibbs v. United Mine Workers, 343 F. 2d 609).
In an analogous case (Isbrandtsen Co. v. Local 1291, 204 F. 2d 495 [1953]), one of plaintiff’s vessels was chartered to another, when the Union struck the ship against Lavine Shipping Co., hired by the charterer to unload. The strike was in violation of the Lavine-Union collective bargaining agreement, and plaintiff sustained damage. The court (p. 498) rejected the contention that intent “ to benefit all the world who might be helped by the faithful performance of the contract would give these remote parties rights against one who broke it. It may well be that Isbrandtsen suffered a loss of use of its boat because a strike stopped the unloading of [the vessel] * * *. It also may be that the people who had cargo to ship on the next voyage lost a market by the delay. And it may be that the people who did not get the goods on the next voyage, on time, lost a profitable bargain on that account. But neither in contract nor in tort have duties been extended very far beyond the immediate parties to the facts out of which a cause of action is said to arise ”.
In substance, recovery is restricted, to those to whom a duty was owed and who were within the foreseeable zone of risk or injury. Plaintiffs must be denied recovery on this theory because it is evident that the strike was not aimed at each as apart from the public generally.
*509 At the same time the damages sued for are too remote and too indirect. In a proceeding arising out of alleged wrongful acts by public employers or employees (absent specific statutory authority empowering such an action), the plaintiff must show damages incurred by himself different in character from those sustained by the public generally (31 ALB 2d 1142,1176; Slavin v. McGuire, 205 N. Y. 84). The injuries sustained by plaintiffs are no different in kind or quality from those sustained by everyone affected by the strike. The intentional nature of the tort herein, it may be argued, was directed against everyone. But in actuality, it was directed against no one in particular, except the employer, who does not sue herein.
The extension of liability urged by the plaintiffs is dramatic and drastic, and without a readily ascertainable or definable limit. Under the circumstances, this court, sitting at nisi prius, will not effectuate the choices espoused by plaintiffs without more specific and compelling authority than presented hereon. To include within the realm of recovery those to whom injury was unforeseeable and amount of damages unpredictable at the time of the act complained of, is not mandated by the cases (cf. United Mine Workers v. Osborne Min. Co., 279 F. 2d 716, cert, den. 364 U. S. 881, supra; Deena Prods. Co. v. United Brick & Clay Workers, 195 F. 2d 612, cert. den. 344 U. S. 822, with Gilchrist v. United Mine Workers, 290 F. 2d 36, cert. den. 368 U. S. 875; Pennsylvania R. R. Co. v. National Mar. Union, 206 F. Supp. 797), nor by traditionally accepted theories of contract ór tort law (Restatement, Contracts, §§ 133, 139; 2 Willis-ton, Contracts, § 356A [rev. ed., 1936]; Prosser, Torts, pp. 972-1013 [1941 ed.]). In view of the nature of the field, the afore-expressed need for judicial restraint in relation to the scope of liability imposed by statute, and the various other considerations noted above, the tortiously based causes must be held insufficient in law.
The claims based upon the alleged violation of plaintiffs’ human rights, under the United Nations Declaration, are insufficient and dismissed. It need not be questioned but that what occurred here in the wake of the strike and the consequent assault upon the people of this city, and elsewhere, would be considered a serious deviation from the pattern of human rights and behavior envisaged by the principles espoused in the United Nations Universal Declaration of Human Rights. Like the doctrinal codes and commands of religious bodies and orders, their precepts of ethical behavior do not yet entail judicial authority and condemnation for failure of faith. While natural *510 right and doctrinal teachings doubtlessly guide the courts of this land, they are not in the texture of known categories of actions available here, despite the growth of regard and concern for redress of tortious wrongs. In short, no claim of the type asserted by plaintiffs can be founded thereon.
With respect to the causes of action premised upon diminution of stock value, it may not be stated that the individual plaintiffs enjoy a better position than the corporate plaintiffs. Not only is there the matter of remoteness, absence of duty and of a statutory remedy but in addition the alleged injury is done to plaintiffs derivatively. The alleged injury is to the corporation directly, not to the stockholders directly. Nothing that is alleged creates a diminution in stock value except as it is reflected in a lowering of corporate value.
The causes based upon various contractual theories are without merit for the reasons hereinabove indicated.
Finally, reference is made to the public pronouncements of Union officials, who, it is asserted, maliciously inflicted extreme injury and suffering upon a helpless public. Plaintiffs recall the condemnations of editorial writers. They invoke the sovereign and constitutional source of power of “We the People ” and article X of the Bill of Rights. These arguments may appeal to one’s emotions in recalling the first two weeks of 1966. However, this court must base its determination upon and be necessarily responsive to only legal principles. It is not for this court to determine whether a particular disposition may be more socially desirable, nor is it the function of this court to set forth its personal philosophy of the merits of the Condon-Wadlin Act.
The unlawful strike is now history, and the hardships suffered by the general public need not be repeated. However, no legal theory has been advanced which may reasonably and judicially be extended to afford the plaintiffs the relief requested. As a result, the consequences and damages which evolved from the action of the Unions are not compensable. The legal maxim “damnum absque injuria” appears most appropriate to the class of cases concerned herein. Thus, while there may have been damage and loss, there has been no violation of any recognized legal right of the plaintiffs and no remedy is afforded them by any act of the Legislature or any common-law doctrine. In a final analysis, it appears that in the case of strike action by employees in the public service, any remedy in favor of the general public must emanate from explicit legislative action, rather than court adjudication.
*511 The motions of the Unions to dismiss- the complaints are granted. Accordingly, the technical objections asserted by defendants with respect to the form of pleadings are rendered academic.

 This provision, which effects an automatic termination of employment, gives rise to further difficulty in plaintiffs’ maintenance in their causes. If the employment of the individual members terminated upon their strike, or refusal to report for duty, then from that moment on they were no longer employees of the Transit Authority and therefore no longer in violation of the Condon-Wadlin Act. Clearly, plaintiff’s cannot recover if their assertion of liability is predicated upon a claim that the members of the defendant Unions could not refuse employment by the Transit Authority.