Howard FULENWIDER,
Plaintiff-Appellee,

v.

FIREFIGHTERS ASSOCIATION LOCAL
UNION 1784, et al,
Defendants-Appellants.

Supreme Court of Tennessee.

Oct. 12, 1982.

On Petition for Rehearing Nov. 12, 1982.

Thomas R. Prewitt, Fred M. Ridolphi, Jr., Jon P. McCalla, Michael P. Waters, William A. Cohn, Memphis, for plaintiff-appellee; Armstrong, Allen, Braden, Goodman, McBride & Prewitt, Memphis, of counsel.

Allen S. Blair, James R. Newsom, III, Memphis, Edward J. Hickey, Jr., Michael S. Wolly, Richard J. Hirn, Washington, D.C.,

for defendants-appellants; Hanover, Walsh, Jalenak & Blair, Memphis, Mulholland & Hickey, Washington, D.C., of counsel.

## OPINION

HARBISON, Chief Justice.

The question presented in this case is whether a private action for damages may be maintained by a property owner incidentally affected by an illegal work stoppage by members of a public employee union. Other remedies, both civil and criminal, may be appropriate under certain circumstances, but the question presented here is whether or not a private damage suit will lie under the common law, there being no applicable state statutes on the subject.

The trial court overruled motions for dismissal filed by the defending parties but permitted an interlocutory appeal. The Court of Appeals held that no action would lie by the private property owner upon the contract, or memorandum of understanding, existing between the municipal employer and a local chapter of a national firefighters' union. It likewise held that no action in tort would lie except for one predicated upon common-law nuisance. It found the allegations of the complaint sufficient to state a claim based upon that theory.

This Court granted review, and we are of the opinion that the complaint should be dismissed in its entirety. We agree with the reasoning of the Court of Appeals on the issues of contract and tort generally. However, we do not find that the allegations of the present complaint sufficiently state a claim for relief upon the theory of a public nuisance.

The complaint alleged that firemen employed by the City of Memphis, members of a local chapter of a national firefighters' union, went on strike on July 1, 1978, in violation of state law. It was alleged that on that same evening at about 10 p.m. a fire started in a shed located behind commercial property owned by the plaintiff on Cooper Street in Memphis. It was alleged that the fire spread slowly to the main structure and burned until about 3 a.m.

Plaintiff alleged that he summoned the Memphis Fire Department and that the Fire Department answered the call. The allegations of the complaint are that the Department sent an insufficient number of trained men and insufficient equipment to control the fire. It was alleged that because of the illegal strike citizens of Memphis had inadequate fire protection and that plaintiff's property was destroyed as a consequence.

It should be noted that the complaint contains no allegation that the union or its members started the fire, were responsible for it, blocked the streets or access to plaintiff's property, or otherwise impeded the use of such men and equipment as were in fact dispatched. In essence, the complaint is that there was an insufficient response to the fire, allegedly because otherwise available men and equipment could not be utilized as a result of the strike.

The original complaint was a tort action. By amendment plaintiff also claimed to be a third-party beneficiary of the labor agreement between the City and the union.

■ The City of Memphis was initially joined as a defendant. Subsequently it was voluntarily dismissed. Apparently this was a recognition by the plaintiff and an acquiescence in the general rule of law that a city is not liable in a private damage suit to individual citizens for failure to furnish adequate fire or police protection. For a comprehensive discussion of current law in that regard, see *Warren v. District of Columbia,* 444 A.2d 1, (D.C.App.1981) (limited duty of municipality does not extend to claims by victims of crime). *See also Burnett v. Rudd,* 165 Tenn. 238, 54 S.W.2d 718 (1932); *Irvine v. Chattanooga,* 101 Tenn. 291, 47 S.W. 419 (1898). The latter cases were decided prior to the enactment of the present Tennessee Governmental Tort Liability Act, T.C.A. §§ 29–20–101 to –407. They may be affected to some extent by that statute, but since the City is no longer a party to the action, we need not decide that question. Whether based upon aspects of governmental immunity or upon the principle that duties of municipal corporations in furnish-

ing fire and police protection are limited and do not extend to private individuals, most jurisdictions have not recognized municipal tort liability to private citizens in situations like that alleged in the instant case.

Nevertheless plaintiff insists in the present case that because the work stoppage or strike was "illegal", employees of the City and their union representatives are in some manner rendered legally liable to private citizens for the inadequate rendition of municipal services, even though neither they nor the municipality would otherwise have such liability under the common law. As stated previously, there are no applicable state statutes dealing with municipal employees such as those involved here or their right to engage in collective bargaining or to strike.[1]

Previous cases in this state have held that strikes by public employees are illegal and that contracts between municipal corporations and unions representing their employees are unenforceable. *See City of Alcoa v. IBEW Local Union 760,* 203 Tenn. 12, 308 S.W.2d 476 (1957); *Weakley County Municipal Electric System v. Vick,* 43 Tenn.App. 524, 309 S.W.2d 792 (1957).

We are not asked to disturb those rules in the present case, although plaintiff is somewhat ambivalent as to the "legality" of the memorandum of understanding between the City and the union, recognizing that such agreements have generally been held unenforceable but nevertheless insisting that plaintiff has enforceable rights arising therefrom as a third-party beneficiary.

▇▇▇ We are satisfied with the rationale of the Court of Appeals in holding that plaintiff had no enforceable rights arising out of this informal labor contract, the principal terms of which appear, in all events, to have expired more than four months prior to the date of the alleged strike. We likewise approve the result reached by the Court of Appeals in denying liability under principles of negligence applicable to claims such as that asserted here.

We do not agree with the Court of Appeals, however, that the allegations of the complaint sufficiently allege the commission of a common-law public nuisance. As stated previously, there is no claim that the union or its members blocked streets, obstructed access to plaintiff's property, caused the fire, directly damaged the buildings involved, or committed any other act creating a condition amounting to a nuisance. The only claim is that the work stoppage itself—the collective bargaining activities and failure of the employees to report to work—constituted a public nuisance. We are not prepared to so hold.

In our opinion any strike—whether legal or illegal—could result in the creation of a nuisance by conduct such as that mentioned above: the obstruction of streets and highways, disorder and public disturbance, etc. We are not aware of any case which has held that the labor activity alone, whether legal or illegal, amounted to a nuisance in and of itself. We are aware that such theories have been asserted in legal periodicals. *See* Notes, 91 *Harv.L.Rev.* 1309 (1978); 80 *Mich.L.Rev.* 1271 (1982). In our opinion, however, this is a drastic conclusion and one which we find difficult to sanction.

Principally relied upon by the plaintiff, and perhaps the strongest case in support of his claim of common-law nuisance, is the case of *Caso v. District Council 37, A.F.S.C. M.E.,* 43 A.D.2d 159, 350 N.Y.S.2d 173 (1973). In that case striking union members caused raw sewage and garbage to contaminate public waters and beaches, thereby endangering public health.

In the course of its opinion the Court emphasized:

"The conduct here, with the resultant damage, was willful and malicious, while in *Jamur,*[2] decided under the Condon-

---

1. There are some limited Tennessee statutes dealing with collective bargaining by public school teachers, T.C.A. §§ 49–5501 to –5516 and public transit employees, T.C.A. §§ 7–56–

102, –109. The state does not have a general statute dealing with this subject.

2. *Jamur Productions Corp. v. Quill,* 51 Misc.2d 501, 273 N.Y.S.2d 348 (1966).

Wadlin Act, the damages were more tangential, only secondarily causing the damages claimed by the businessmen." 350 N.Y.S.2d at 177.

The principal holding in the *Caso* case, *supra,* was that a New York labor relations statute did not preclude a private tort claim such as was being asserted there. The court stated:

"A common-law cause of action in nuisance would appear to be the appropriate remedy in the instant case. Of course, the plaintiffs at trial will have to adduce facts to support such a cause of action. The claim itself, however, does represent a cause of action, aside from the sufficiency of the pleadings, which the defendants do not challenge on this appeal." 350 N.Y.S.2d at 178.

█ Of course there is little doubt that a condition such as that deliberately created by the employees in the *Caso* case, *supra,* amounts to a public nuisance. Even a municipal corporation itself can be held liable to private property owners for creating such contamination. *See Kolb v. Knoxville,* 111 Tenn. 311, 76 S.W. 823 (1903); *Knoxville v. Klasing,* 111 Tenn. 134, 76 S.W. 814 (1903). Had the union and its members in the present case caused pollution of the atmosphere, obstructed streets, set fires to property, or engaged in other such conduct, creating a condition such as that described in the *Caso* case, *supra,* there might well be liability upon them, whether their work stoppage was legal and proper or otherwise. In our opinion a legal right to strike does not carry with it the right to create a public nuisance. On the other hand, absence of a right to strike does not automatically convert into a public nuisance conduct or conditions not otherwise constituting one.

We recognize that the term "nuisance" is a flexible one, which has been applied to many different factual situations and in many different contexts. It usually refers, however, to the creation of some condition, such as noise, open burning, or other offensive and unreasonably dangerous conditions, from which municipal corporations are no more immune than are private individuals.

*See City of Nashville v. Mason,* 137 Tenn. 169, 192 S.W. 915 (1917). However, we are not prepared to extend the common-law definition of the term to embrace a mere work stoppage such as that described in the present complaint.

This conclusion is similar to that which has been reached by most of the courts which in recent years have considered the liability of public employee unions. One of the leading cases declining to permit a private tort action for an incidental claim against striking public employees and their union is *Burke & Thomas, Inc. v. International Organization of Masters, Mates & Pilots,* 92 Wash.2d 762, 600 P.2d 1282 (1979). There the claim was for tortious interference with business relationships. It was asserted by owners and operators of tourist resorts who suffered economic loss as a result of an unauthorized strike by ferry pilots. The Court held that the allegations of the complaint were insufficient to state a claim under the theory asserted, and it expressly declined to "fashion a new remedy"

". . . which would allow private parties incidentally injured by strikes of public employees, prohibited by contract or law, to recover damages for their injuries, and thus enter the area of public employee relations. We are persuaded by consideration of the unique nature of labor relations in the public sector, and by the unified voice of decisional law, that progress in public employee labor relations, and the public welfare in general, are best served at this time by a rule of judicial neutrality and restraint." 600 P.2d at 1285.

Other courts have also declined to allow private tort actions, even by employers. A case frequently cited is *Lamphere Schools v. Lamphere Federation of Teachers,* 400 Mich. 104, 252 N.W.2d 818 (1977). While the decision was in part based upon preemption of labor relations by a state statute, it was also based upon considerations of public policy. *See also City of Fairmont d/b/a Fairmont General Hospital v. Retail, Wholesale and Department Store Union,* 106 L.R.R.M. 2083 (W.Va.1980).

Plaintiff has placed reliance upon the trial court opinion in *Burns Jackson Miller Summitt & Spitzer v. Lindner, et al.,* 108 Misc.2d 458, 437 N.Y.S.2d 895 (Sup.Ct.1981). That decision, however, which cited the Court of Appeals opinion in the present case, has subsequently been reversed and the suit dismissed both as to a claim of nuisance and as to all other tort claims. *See* 88 A.D.2d 50, 452 N.Y.S.2d 80 (App.Div. 1982). The Appellate Division found that even if the nuisance claim could otherwise be maintained, there was insufficient assertion of special or individual damage to state a cause of action.

■■■ In the absence of statutes to the contrary, unions and their members, public or private, are liable for torts committed by them directly causing immediate personal injury or property damage to employers or to third parties. *See Gilchrist v. United Mine Workers of America,* 290 F.2d 36 (6th Cir.1961), *cert. denied,* 368 U.S. 875, 82 S.Ct. 120, 7 L.Ed.2d 76 (1961); *United Mine Workers of America v. Osborne,* 279 F.2d 716 (6th Cir.1960), *cert. denied,* 364 U.S. 881, 81 S.Ct. 169, 5 L.Ed.2d 103 (1960); *Pasadena Unified School District v. Pasadena Federation of Teachers,* 72 Cal.App.3d 100, 140 Cal.Rptr. 41 (Ct.App.1977); *Board of Education v. Farmingdale Classroom Teachers Assn., Inc.,* 38 N.Y.2d 397, 343 N.E.2d 278, 380 N.Y.S.2d 635 (1975); *International Union, United Automobile, Aircraft and Agricultural Implement Workers of America v. American Metal Products Co., Inc.,* 56 Tenn. App. 526, 408 S.W.2d 682 (1964). As previously stated, however, no such claim is made in the present case. Plaintiff does not allege willful or even negligent destruction of his property by direct action of the union or its members. The claim is based only upon "secondary" or incidental harm as a by-product of the work stoppage, and our holding in this case is limited to that type of claim and to the particular allegations made in this complaint.

This Court should not be understood as sanctioning in any way illegal or improper strikes by public or by private employees. Many jurisdictions have found appropriate for legislation the important subject of the status of public employees and the extent to which they may engage in collective bargaining. We, however, in this case deal strictly with a common-law issue, and in the absence of statute we are not prepared to hold that a work stoppage, legal or illegal, in and of itself constitutes a public nuisance.

The judgment of the Court of Appeals is affirmed except as to the issue of public nuisance. As to that issue it is reversed, and the suit is dismissed at the cost of appellee.

COOPER, BROCK and DROWOTA, JJ., concur.

FONES, J., files dissenting opinion.

FONES, Justice, dissenting.

I respectfully dissent.

Strikes by public employees are clearly illegal in Tennessee. *City of Alcoa v. IBEW,* 203 Tenn. 12, 308 S.W.2d 476 (1957). It is also true that present case law in Tennessee declares that contracts between municipalities and public employee unions are illegal and unenforceable. *Weakley County v. Vick, supra.*

Our sister states, had in the past, almost uniformly adhered to those two judge-made principles, but in recent years most state legislatures have enacted public employee labor relations acts legalizing labor contracts, but not strikes. The tremendous increase in the number of public employees and the corresponding increase in public employee unions has inevitably led to many illegal strikes by public employees and to many illegal collective bargaining agreements or so-called memorandum of understanding. A strike that terminates fire, police, or other public services vital to the health, safety, and economy of the community always threatens catastrophic consequences, and unfortunately those consequences often materialize. In recognition of such potentialities, forty-one states have enacted legislation dealing to some extent with collective bargaining rights of public employees and the sanctions that may be

imposed by public officials when public employees strike and endanger the health, safety, or welfare of the public.[1]

The overwhelming majority of those statutes continue to prohibit strikes by public employees, although sometimes limited to essential services, which inevitably include fire and police.

As might be expected considerable litigation has been spawned by public employee strikes. The most significant cases that my research has disclosed are *Burns, Jackson, Miller, Summitt & Spitzer v. Lindner*, 108 Misc.2d 458, 437 N.Y.S.2d 895 (1981); *Burke and Thomas, Inc. v. International Organization of Masters, Mates and Pilots*, 92 Wash.2d 762, 600 P.2d 1282 (1979); *Lamphere Schools v. Lamphere Federation of Teachers*, 400 Mich. 104, 252 N.W.2d 818 (1977); *Caso v. AFSCME*, 43 App.Div.2d 159, 350 N.Y.S.2d 173 (1973); *Jamur Production Corporation v. Quill*, 51 Misc.2d 501, 273 N.Y.S.2d 348 (1966).

None of these cases involved danger to the lives and property of the public with the possible exception of *Caso*.

In *Jamur*, a cause of action was denied business corporations that sustained economic damage as a result of a transit strike.

In *Burke and Thomas, Inc.*, a ferry pilots' strike prevented the flow of Labor Day traffic from the mainland to resort areas, to the loss of resort business operators. The Court clearly indicated a willingness to hold public employee unions liable for the tort of public nuisance but declined to do so in that case, adopting as one of its reasons the judicial restraint doctrine of *Lamphere*.

Our Court of Appeals has created a new cause of action to fill a part of the vacuum left by legislative inaction in the field of public employment labor relations. The proposition that a public employee strike such as occurred here constitutes a public nuisance appears to be gaining some judicial acceptance in our sister states.

The complaint in this case alleges that the illegal strike left the City without adequate fire protection "endangering the lives and property of plaintiff and other citizens of Memphis."

In considering a T.R.C.P. 12.02(6) motion to dismiss, the Court should construe the complaint liberally in favor of the plaintiff taking all of the allegations of fact therein as true. *Huckeby v. Spangler*, 521 S.W.2d 568, 571 (Tenn.1975).

I see a marked distinction between an illegal strike by transit workers, ferry pilots, etc. that merely causes great inconvenience to the public at large and significant loss of profit to the business community as was the case in *Jamur, Burke and Thomas, Inc.*, and *Burns, Jackson* or school teachers as in *Lamphere* and a strike by firemen that endangers the lives and property of the citizens of a crowded metropolitan city. The majority concedes that the creation of a condition that is offensive or unreasonably dangerous, constitutes a nuisance, as in *City of Nashville v. Mason*, 137 Tenn. 169, 192 S.W. 915 (1917). The essence of that decision was that the negligent and reckless acts of municipal employees in piling upon a burning heap great quantities of highly combustible matter, left to burn at will during a high wind, that caused the destruction by fire of Mason's house, stated a cause of action in nuisance. The rationale of that decision was that the performance of the public duty to promote public health by picking up and disposing of garbage is a governmental duty as distinguished from a proprietary function of government and a municipality is not liable for the negligence of its servants in so doing, subject to the exception that in performing that duty it must not commit a nuisance. *See Kolb v. Knoxville*, 111 Tenn. 311, 76 S.W. 823 (1903) and *Knoxville v. Klasing*, 111 Tenn. 134, 76 S.W. 814 (1903).

The rationale behind the judge-made rule in Tennessee against public sector strikes is that employees who have assumed a duty to

1. *See* Note, *Private Damage Actions Against Public Sector Unions for Illegal Strikes*, 91 Harv.L.Rev. 1309 (1978), for a listing of states that had enacted collective bargaining statutes as of April, 1978. *See also* Annot. 84 A.L.R.3d 366 (1978).

serve the public in performing a governmental function, must as a matter of public policy, be prohibited from taking concerted action that will result in a paralysis of that governmental function.

We do not know the extent of the proof that the plaintiffs might adduce in support of the allegation that the illegal strike left the city without fire protection that endangered the lives and property of the plaintiff and other citizens of Memphis. It appears to me that the plaintiff could likely present evidence that would justify the conclusion that an unreasonably dangerous condition was created. If so, I seriously question the vitality of the distinction the majority makes between "direct action" such as blocking the streets and "indirect action," the legal label they place on an illegal strike. If the inevitable result of an illegal strike is to create an unreasonably dangerous condition endangering the lives and property of the citizenry, I find it totally immaterial whether the proximate cause thereof was a direct or an indirect act.

I prefer judicial neutrality and restraint in the area of public employee labor relations because it is clear that the ultimate public policy goal of labor, peace and tranquility in the public sector can best be achieved by a legislative act that balances the rights and responsibilities of public employees, the duties and powers of governmental entities and the sanctions that may be imposed by them, and the rights of private citizens who may be innocent victims of labor strikes, even under the best of public employment regulatory acts.

However, if as a result of a public employee's strike the lives and property of the citizenry are exposed to unreasonably dangerous conditions, the public interest demands that there be a remedy, a deterrence or a sanction, legislative or judicial and at the present time no such remedy exists in Tennessee.

I am not willing, today, to commit myself to the adoption of a new doctrine that would create a cause of action by individuals injured as a result of an illegal strike by public employees, solely on the strength of the meager allegations in the complaint before us. On the other hand, I am not willing to concur, on a Rule 9 appeal, in the dismissal of this lawsuit without a trial on the merits of whether an unreasonably dangerous condition was created by the Memphis firemen's strike and whether an acceptable doctrinal basis exists to justify recognition of a cause of action for a public nuisance in such circumstances.

I would therefore deny this discretionary appeal and remand this case for a trial in the Circuit Court of Shelby County.

## ORDER ON PETITION FOR REHEARING

HARBISON, Justice.

A petition for rehearing has been filed on behalf of appellee requesting that the Court modify its opinion and mandate in this case so that upon remand appellee may have an opportunity to amend the complaint if this can properly be done within the ethical requirements of Rule 11, T.R.C.P.

Inasmuch as the motion of appellants to dismiss the complaint in its entirety was sustained for the first time by this Court on appeal, the motion of appellee is well taken. *Butler v. Trentham*, 224 Tenn. 528, 458 S.W.2d 13 (1970).

The opinion and order of dismissal heretofore entered will be modified and upon remand the trial court will afford counsel for appellee a reasonable time within which to file an amendment to the complaint if desired. Otherwise the cause will stand dismissed. If an amendment is filed, the trial court will conduct such further proceedings as may be appropriate.

As a condition to amending the complaint, appellee will pay all costs incident to the appeal of this cause.

FONES, C.J., and COOPER, BROCK and DROWOTA, JJ., concur.