**IN THE COURT OF APPEALS OF TENNESSEE**
**AT KNOXVILLE**

FILED

**July 14, 1999**

**Cecil Crowson, Jr.**
**Appellate Court**
**Clerk**

| | | |
|---|---|---|
| STELLA WOODY, | ) | GREENE CIRCUIT |
| | ) | |
| Plaintiff/Appellee | ) | NO. 03A01-9811-CV-00390 |
| | ) | |
| v. | ) | HON. KINDALL T. LAWSON |
| | ) | JUDGE |
| ROY ALLEN JOHNSON and | ) | |
| GREENEVILLE OIL & | ) | |
| PETROLEUM COMPANY, INC., | ) | |
| | ) | REVERSED and |
| Defendants/Appellants | ) | DISMISSED |

Richard M. Currie, Jr., Kingsport, for Appellants.
Charles R. Terry, Morristown; W. Lewis Jenkins, Jr., Dyersburg; and Douglas
T. Jenkins, Rogersville, for Appellee.

**O P I N I O N**

The Case

This is an action for damages for the alleged erection and maintenance of a

private temporary nuisance affecting the plaintiff's property. The jury returned a

verdict for the plaintiff for damages for the years 1995 - 1996 in the amount of

$50,000.00. The motion of the defendant for judgment NOV or for a new trial was

overruled. This appeal resulted.

The issues are: (1) Whether there was material evidence to support the

finding that the defendants-appellants created and maintained a nuisance; (2)

whether there was material evidence to justify an award of damages; (3) whether

expert testimony was properly admitted with respect to the costs of constructing

an alternate entrance to the plaintiff's property; and (4) whether expert testimony

was properly admitted with respect to projects unrelated to the case at Bar. Our

resolution of the first issue is dispositive of this appeal and we pretermit a consideration of the remaining issues.

Since this is a jury case, the verdict must be upheld if material evidence can be identified in the record, T. R. C. P. 13(d); *Pullen v. Textron,* 845 S.W.2d 777 (Tenn. App. 1992).

The Pleadings

The complaint alleges that the plaintiff owns a parcel of land near the intersection of U.S. Highway 11-E and Interstate 81, adjoining a parcel owned by the defendant Johnson, which was carved out of the plaintiff's property and leased to the defendant, Greeneville Oil Company, Inc., which, on August 9, 1995, obtained a highway entrance permit from the Tennessee DOT allowing the construction of an entrance from U.S. Highway 11-E. It is alleged that this entrance blocks the plaintiff's entrance onto her property from U.S. Highway 11-E, with resulting damages. By amended complaint, the plaintiff demanded that the alleged nuisance created by the construction of the entrance by the defendants should be abated.

The defendants denied that they created a nuisance by the erection of a lawfully permitted entrance into their property.

The case was submitted to the jury on the sole issue of whether the defendants created and maintained a nuisance for which damages, if any proved, were sought. The demand for the abatement of the nuisance was apparently abandoned.

The Evidence Respecting a Nuisance

Considered in the best possible light to the plaintiff, and disregarding all contrary evidence, the evidence revealed that the plaintiff owns a 20-plus acre tract

2

of land in Greene County at the intersection of Interstate 81 and U.S. 11-E.  The Interstate is immediately west of the property; U.S. 11-E is a divided, four-laned, limited-access highway bounding the property on the south.

Idell Road, extending north and south, intersects, but does not cross, U.S. 11-E directly across from the plaintiff's property.  There is a cut in the median of U.S. 11-E adjacent to the southwest corner of her property, which is unimproved.

In 1986, the plaintiff and her husband sold a 1.34 acre tract in the southwest corner of their property to Gene and Lois Smith.  By this deed they created two (2) small triangular reciprocal easements in recognition of access from U.S. 11-E, one of which was for the benefit of the remaining land of the plaintiff.  It was located in the southeast corner of the 1.34 acres sold to Smith.  A similar easement on the plaintiff's property for the benefit of Smith was created.  The two sides of the triangle formed a near-right angle and measured 30 feet from the southeast corner of the 1.34 acre tract northwardly along the boundary between the respective properties, and measured from the common corner of these properties 30 feet westwardly along the southern boundary of the 1.34 acre tract, which is also the northern margin of the right of way of U.S. 11-E.

These easements were described as allowing for ingress and egress to each party across the respective corners of the other's property.

Smith constructed a gas station and restaurant on the 1.34 acre tract, and applied to the DOT for a permit to construct a driveway to his property.  In the drawing presented with his application, the property line between his tract and the property of the plaintiff was represented to be about 25 feet east of its actual

location.[1]  Smith operated the gas station until 1988 when he sold it to Myers and Kilday.  The 1.34 acre tract was acquired by the defendant Johnson in 1994.

The plaintiff is an elderly lady who lives in Anderson County and was essentially not involved in the management of her property.  She relied upon George Carpenter,[2] a nephew and Greene County resident, who acted as her agent in all matters pertaining to the property. It was the sale of the 1.34 acre tract that generated the difficulties encountered by the plaintiff with respect to her remaining property.

An entrance at the median cut must be in line with the cut according to the Rules & Regulations of DOT.  Vehicles exiting the property must be able to cross the westbound lanes and turn left (east) into the eastbound lanes, and any entrance must be located at least 12.5 feet from the adjoining property line.  If this requirement is not satisfied, the entrance would not line up properly with the median cut, which the DOT cannot extend eastwardly for two reasons: first, cuts longer than 80 feet will not be permitted, and secondly, the elevations of the east and westbound lanes of U.S. 11-E are not the same at the cut.  The triangular easements heretofore discussed, agreed upon by the plaintiff and her husband, and by Smith, with input by Carpenter, proved to be inadequate for access by large vehicles.  For several years, Carpenter, on behalf of the plaintiff, tried unsuccessfully to obtain DOT approval of a commercial entrance at the Idell Road median cut for the plaintiff's property.  The record reveals that he was repeatedly advised that the approval of the adjoining landowner would be necessary.

---

[1]Had DOT been aware of the error, that is, had the true location been shown, the consent of the plaintiff would have been required.

[2]The record indicates that Carpenter was entirely versant about the history of this matter.  He did not testify.  When queried about his failure to testify, counsel replied somewhat cryptically and the matter was not pursued.

The record contains a rather astonishing amount of evidence reflecting the efforts of the parties to adjust this matter. Over a period of about five years, beginning in 1989, Carpenter, on behalf of the plaintiff, held discussions with Johnson about constructing an access road from U.S. 11-E across the plaintiff's and defendant's properties. Carpenter also attempted to persuade the DOT to approve an entrance to the plaintiff's property. The plaintiff testified that her nephew made numerous trips to Nashville to contact the DOT about the problem. Because a portion of the 1.34 acre tract would be utilized for the access road, the defendant urged the plaintiff's agent to trade a measure of her land lying to the rear, north, of the 1.34 tract, in exchange. This urging was unavailing.

After the defendant acquired the 1.34 acre tract, he employed an engineering firm, Vaughn & Melton, to assist in its development. An architect, John Fisher, was also employed. There was a drainage easement on the westerly two-thirds of the property which had been created by DOT when Interstate 81 was constructed. This easement hampered development. Melton and Vaughn in time developed a plan for a driveway from U.S. 11-E into the property that was acceptable to the Tennessee DOT, the design of which took into account the plaintiff's property, because of the DOT requirement that a driveway must be at least 12.5 feet from the adjoining (plaintiff's) property line, *unless approval is obtained from the adjoining owner,* and because the right of the plaintiff to use the easement created in her deed to Smith had to be respected.

The driveway is located 12.5 feet from the plaintiff's property line, but in order to preserve access to the easement, the curbing along the driveway was lowered to grade level, thus allowing vehicles unhampered access to the plaintiff's property.

But the curb delineating the entrance extends into the DOT right of way fronting the southwest corner of the plaintiff's property. It was constructed according to DOT requirements, and prevents a vehicle from crossing the right of way directly onto the plaintiff's property. But it is not disputed that the curb would not prevent the plaintiff from obtaining a driveway permit if she could otherwise meet the requirements of the DOT for a commercial entrance at that location.[3]

The plaintiff's property fronts on U.S. 11-E for several hundred feet. She has ready access to the westbound lanes of this highway. To have access to the eastbound lanes would require an entrance road encroaching upon the defendant's property and thus requiring their consent as well as the approval of DOT.

Analysis

The appellant strenuously argues that the evidence did not establish the creation or maintenance of a nuisance. We agree. The pattern instruction mirrored Tennessee law that a nuisance is an *unreasonable* or *unlawful* use of property that results in material or substantial annoyance, discomfort, harm or injury to the plaintiff, or to her free use, possession or occupation of her property. As held by the Supreme Court in *Fulenwider v. Firefighters Ass'n. Local 1784,* 649 S.W.2d 268 (Tenn. 1982):

> "We recognize that the term 'nuisance' is a flexible one which has been applied to many different factual situations and in many different contexts. It usually refers, however, to the creation of some condition, such as noise, open burning, or other offensive and unreasonably dangerous conditions . . . ."

We are of the opinion that the term "nuisance" is not so flexible as to include the factual scenario presented in this case. The defendants merely constructed an entrance into and upon their property. They did not trespass or encroach upon the

---

[3]*The offending curb is on the right of way of U.S. 11-E.*

6

plaintiff's property. No legal right of the plaintiff was violated. The curbing complained of was mandated and approved by the Tennessee DOT; the plaintiff's right to access her property *through the easement on the defendant's property was undisturbed.* The defendants made no unlawful use of their property.

We hold that as a matter of law the undisputed evidence does not prove the existence of a private nuisance. We agree with the appellant that considered in the best possible light to the plaintiff the evidence merely established that the defendants and their predecessors in title, for nearly a decade, declined to give the requisite permission to the plaintiff for the construction of an entrance which would have encroached upon their property. Resolution by mediation failed, equity was apparently not resorted to, and this action alleging a common-law temporary nuisance was filed, which, if sustainable, can be repeatedly filed until the defendant capitulates and surrenders his rights and his property to the plaintiff whose initial conveyance of the 1.34 acres is at the heart of the problem. The actions of the defendants cannot logically be described as the unreasonable, unwarrantable, or unlawful use of their property, nor as the result of improper, indecent, or unlawful personal conduct, nor as anything that endangered the plaintiff's life or health, or offended her senses, or violated the laws of decency, to utilize the historical and empirical elements of a nuisance. *Sherrod v. Dutton,* 635 S.W.2d 117 (Tenn. App. 1982); *Caldwell v. Knox Concrete Products,* 391 S.W.2d 5 (1964); and the host of cases therein cited.

The judgment is reversed. The motion of the defendants-appellants for a directed verdict is granted, and the suit of the plaintiff is dismissed. Costs are assessed to the appellee. The case is remanded for all appropriate purposes.

_____
William H. Inman, Senior Judge

CONCUR:

_____
Houston M. Goddard, Presiding Judge

_____
Herschel P. Franks, Judge