[Civ. No. 25310. Second Dist., Div. Four. Apr. 5, 1962.]

A. I. GAGE PLUMBING SUPPLY COMPANY, Plaintiff and Respondent, v. LOCAL 300 OF THE INTERNATIONAL HOD CARRIERS, BUILDING AND COMMON LABORERS' UNION OF AMERICA et al., Defendants and Appellants.

198

Alexander H. Schullman and Alfred J. Lakritz for Defendants and Appellants.

Hill, Farrer & Burrill, Carl M. Gould, A. J. Cathcart and Edwin H. Franzen for Plaintiff and Respondent.

BALTHIS, J.—Plaintiff A. I. Gage Plumbing Supply Company, a plumbing contractor, filed suit for an injunction to prevent breach of a collective bargaining contract in effect

between itself and defendant Local 300 of the International Hod Carriers, Building and Common Laborers' Union of America (the members of which are sometimes referred to as "laborers" in contrast to the members of the plumbers union as "plumbers"). Plaintiff filed a supplemental complaint adding a prayer for damages resulting from the alleged breach of contract.

The collective bargaining contract was between the Plumbing-Heating and Piping Employers Council of Southern California, Inc., of which plaintiff is a member, and the Southern California District Council of Laborers and its affiliated local unions, which includes defendant Local 300.

The collective bargaining contract included a provision whereby the union guaranteed that there would be no strikes, slowdowns or stoppages of work occasioned by jurisdictional disputes or otherwise.

Shortly before November 12, 1957, a dispute arose between plaintiff and defendant union as to whether certain work to be performed on a school construction job was to be performed by members of the plumbers union (with whom plaintiff had a separate collective bargaining agreement) or defendant hod carriers and common laborers union. After advice from its labor adviser and conferences with representatives of the plumbers union, plaintiff assigned the work in question to the plumbers.

After plaintiff took action to carry out this decision defendant withdrew the three Local 300 laborers from the job site and began picketing the school construction job, plaintiff's office, and threatened to picket other work sites of plaintiff. The three laborers who were withdrawn were digging trenches which the plumbers were to use to lay pipe prior to the general contractors putting in the foundation. The strike and picketing lasted from November 12 to November 29, 1957.

Plaintiff filed this action on November 13, 1957, for an injunction, received a temporary restraining order which the pickets ignored, and plaintiff then filed a supplemental complaint for monetary damages resulting from the alleged breach of contract.

Defendant filed a general demurrer to the complaint as supplemented, predicated on the proposition that the court was without jurisdiction to try the cause because the matters complained of constituted a possible unfair labor practice which came under the exclusive jurisdiction of the National

Labor Relations Board and the federal courts. This demurrer was overruled.

On November 18, 1957, prior to the hearing on the demurrer, charges were filed with the National Labor Relations Board against plaintiff and against both unions (the laborers and plumbers unions) alleging unfair labor practices. The local board on November 27, 1957, refused to institute proceedings or issue a complaint because such action would not effectuate the National Labor Relations Act.

After trial as to certain issues before the court, a jury having been waived, the trial court filed a memorandum opinion dealing only with the questions as to the court's jurisdiction and as to whether there was a breach of a valid collective bargaining contract. The parties by stipulation agreed that the question of damages was to be litigated at a subsequent hearing. The trial court determined that it did have jurisdiction to try the cause and that defendant had committed four breaches of the contract. The four breaches were (1) the initial jurisdictional dispute; (2) the union's refusal to submit that dispute to the National Joint Board of the Building Trades Department [of the AFL-CIO] for settlement; (3) the calling of the strike and the use of pickets; and (4) the union's refusal to furnish members to perform other customary services. The court in no way attempted to resolve the jurisdictional dispute between the two unions because that dispute had to be settled by the National Joint Board.

The court subsequently took evidence on the question of damages incurred by plaintiff from the aforementioned breaches of contract. Judgment was for plaintiff in the sum of $11,988.

Defendant appeals primarily on the grounds that the trial court had no jurisdiction to try the action in that the union's conduct amounted to an "unfair labor practice" over which jurisdiction is preempted by the federal government in the Labor Management Relations Act of 1947 and must be rectified, if at all, by the National Labor Relations Board and not by a state tribunal. Plaintiff urges that the suit is essentially one for an injunction and for damages arising from a breach of contract, even though such conduct might also directly or incidentally be an unfair labor practice.

The distinction between the two theories of suit is fundamental. ■ If the suit is to enjoin and collect damages

from an unfair labor practice absent any collective bargaining contract, it has been decided by the United States Supreme Court that the federal government has preempted this area of labor relations and in the absence of an overwhelming state interest such as violent picketing (*Allen-Bradley Local* v. *Wisconsin Emp. Relations Board*, 315 U.S. 740, 749 [62 S.Ct. 820, 86 L.Ed. 1154]; *United Construction Workers* v. *Laburnum Constr. Corp.*, 347 U.S. 656 [74 S.Ct. 833, 98 L.Ed. 1025]), the sole jurisdiction lies with the National Labor Relations Board (*San Diego Building Trades Council* v. *Garmon*, 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775]). This preemption occurs even though the National Labor Relations Board has refused to hear the controversy as happened in the instant case.

On the other hand, if there is a collective bargaining agreement in effect between the parties, and an action is brought for an injunction, damages, or arbitration of the dispute arising out of the contract, the federal courts and the state courts are proper tribunals for redress. (*Charles Dowd Box Co., Inc.* v. *Courtney* (Feb. 19, 1962), 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed.2d 483]; *McCarroll* v. *Los Angeles County etc. Carpenters*, 49 Cal.2d 45 [315 P.2d 322].)

A breach of a collective bargaining contract is not in itself an unfair labor practice. The National Labor Relations Board has no jurisdiction to try the case nor has it the power to give damages for breach of contract. (*Grunwald-Marx, Inc.* v. *Los Angeles Joint Board*, 52 Cal.2d 568, 581 [343 P.2d 23].)

The dispute in the instant case arose from the delegation by plaintiff of certain work to the plumbers which defendant union claimed should be performed by the laborers by virtue of a 1941 agreement between the laborers and plumbers national unions. The strike resulted from this dispute. It is not necessary to determine whether an unfair labor practice had in fact been committed. The trial court did not decide whether an unfair labor practice had been committed and correctly held that such determination "is the function of the Board."

To give the state court jurisdiction it is only necessary to find a collective bargaining contract between the parties and conduct (no matter how classified) which breached the contract and gave rise to damages in plaintiff.

It has been held that even though a contract breach is also an unfair labor practice this does not deprive the

courts of jurisdiction. Thus, in *Lodge No. 12 etc. Assn. of Machinists* v. *Cameron Iron Works* (1958) 257 F.2d 467, cert. den., 358 U.S. 880 [79 S.Ct. 120, 3 L.Ed.2d 110], the court said, at pages 472-473:

". . . the better-reasoned cases hold that even where the aggrieved incident or act constitutes both a contract violation and an unfair labor practice, particularly concerning a substantive contract right such as employment or pay, the federal district courts will not be deprived of jurisdiction to grant relief as to the breach of contract, the other aspect being left to the Board. . . . The distinguishing point is that, while an act may be both an arbitrable contract violation *and* an unfair labor practice, a 'breach of contract *is not* an unfair labor practice'; the former is enforced by the courts, the latter by the Board; the former gives to private parties a remedy, the latter uses a private right to effectuate the declared policies of the Act; the former gives a certainty of decision, the latter leaves decision discretionary."

Defendants place great weight on the second *Garmon* case (*San Diego Building Trades Council* v. *Garmon,* 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775]) for the proposition that the National Labor Relations Board has exclusive jurisdiction over the controversy in the instant case. In the *Garmon* case, as here, suit was for an injunction and damages. The distinguishing feature between the two cases is manifest. In *Garmon,* there was no collective bargaining contract which was breached. Here, there is a contract and under the act (§ 301) (29 U.S.C.A. § 185), suits for violations of collective bargaining contracts may be brought in the federal courts.

As was said in *Charles Dowd Box Co., Inc.* v. *Courtney, supra,* (Feb. 19, 1962), 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed. 2d 483], which was a suit brought by the union to declare that a collective bargaining agreement was valid and that defendant employer breached it, resulting in damages, "An analogy is drawn to our decisions which have recognized the necessity of withdrawing from the state courts jurisdiction over controversies arguably subject to the jurisdiction of the National Labor Relations Board. [Citing *Garmon.*] Whatever the merits of this argument as a matter of policy, we find nothing to indicate that Congress adopted such a policy in enacting § 301. The legislative history of the enactment nowhere suggests that, contrary to the clear import of the statutory language, Congress intended in enacting § 301 (a) to

deprive a *party to a collective bargaining contract of the right to seek redress for its violation in an appropriate state tribunal.*''

California also recognizes this fundamental distinction between suits brought to obtain redress for breach of a collective bargaining agreement and suits to obtain redress for other labor-management disputes. The case of *Grunwald-Marx, Inc.* v. *Los Angeles Joint Board*, 52 Cal.2d 568 [343 P.2d 23], is controlling in the instant case.

In the *Grunwald-Marx* case, the employer sought to compel the union to arbitrate a dispute as was provided in the collective bargaining contract. The union moved to dismiss on the ground that the Superior Court had no jurisdiction to consider the petition, and also filed a general and special demurrer. In support of the motion to dismiss, the union, by affidavit, averred that the company was engaged in interstate commerce within the meaning of the National Labor Relations Act; that prior to filing the petition the employer had filed with the National Labor Relations Board a charge that the union was engaging in unfair labor practices within the meaning of section 8(b) (3) of the National Labor Relations Act (29 U.S.C.A. § 158 (b) (3)); that the unfair labor practices charged affected commerce within the meaning of the act; and that the union had refused to bargain. A copy of the charge filed by the company with the National Labor Relations Board was attached to the union's supporting affidavit. The affidavit also stated that ''the National Labor Relations Board has not declined, but in fact has assumed and is now exercising jurisdiction over the present controversy'' between the employer and the union. These claims were not controverted by the company.

The trial court denied the motion to dismiss and overruled the union's demurrers. The union then filed its answer, again raising the jurisdictional question, and setting forth the defense that the matter was not subject to arbitration. The trial court found ''that the issues presented by petitioner [employer] for adjudication to the National Labor Relations Board are not the same as those which constitute the controversy and dispute in the instant petition,'' and directed the employer and the union to arbitrate.

After upholding the arbitration award and sustaining the court's jurisdiction to compel arbitration pursuant to the collective bargaining agreement, the court in the *Grunwald-*

*Marx* case (52 Cal.2d 568, 579) stated: ''. . . the charge before the state court is for breach of contract and the remedy asked is arbitration. The charge before the National Labor Relations Board is the refusal to bargain collectively. The two charges relate to the same controversy. They may overlap, but they are not identical.''

The court continues: (p. 580) ''There are a substantial number of cases holding that the federal courts (as distinguished from the National Labor Relations Board) have jurisdiction where the conduct complained of—that is, the same act—constitutes both a breach of contract and an unfair labor practice. The majority of the lower federal courts have held or implied that in such a case jurisdiction has not been preempted. [Citing cases.] . . . The point was specifically left open by this court in the case of *McCarroll* v. *Los Angeles County etc. Carpenters,* 49 Cal.2d 45 [315 P.2d 322] (cert. den. 355 U.S. 932 [78 S.Ct. 413, 2 L.Ed.2d 415]). . . . It held that state courts have concurrent jurisdiction with the federal courts under section 301 of the Labor Management Relations Act (29 U.S.C.A. § 185).''

The correctness of that conclusion has now been expressly upheld by the United States Supreme Court. The state courts have concurrent jurisdiction with the federal courts to award damages for breach of a collective bargaining contract. (*Charles Dowd Box Co., Inc.* v. *Courtney, supra,* (Feb. 19, 1962) 368 U.S. 502 [82 S.Ct. 519, 7 L.Ed.2d 483] ; *Local 174, Teamsters, etc. of America* v. *Lucas Flour Company* (March 5, 1962) 369 U.S. 95 [82 S.Ct. 571, 7 L.Ed.2d 593].)

 The finding of jurisdiction by the trial court in the instant case is clearly correct and conclusively supported by the cases. *San Diego Building Trades Council* v. *Garmon,* 359 U.S. 236 [79 S.Ct. 773, 3 L.Ed.2d 775], and *Plumbers, etc. 298* v. *County of Door,* 359 U.S. 354 [79 S.Ct. 844, 3 L.Ed.2d 872], relied upon by defendants have no application to the instant case in that no collective bargaining contracts were there involved.

Defendants further contend on appeal that the measure of damages used by the trial court was erroneous. In this connection the rule of damages to be applied in such cases is stated in *Wilson & Co.* v. *United Packinghouse Workers of America,* 181 F.Supp. 809, 820-821, as follows: ''In an action

against a union under Section 301 for damages caused by a breach of a no-strike provision in a contract, the measure of damages recoverable is the actual loss sustained by the plaintiff as a direct result of the breach. *United Electrical, etc. Workers of America* v. *Oliver Corp.*, (8 Cir. 1953) 205 F.2d 376, 388. Such loss would be that which may reasonably and fairly be considered as arising naturally from the particular breach of contract involved and which may reasonably be supposed to have been in the contemplation of the parties at the time the agreement was entered into in the event of such violation."

The trial court found damages of $11,988 consisting of the following items: (1) increased direct labor costs, including foremen—$9,066, (2) cost of fringe benefits, required insurance on item 1—$1,359, (3) additional overhead occasioned by delay in completing the contract, being 15 per cent of items 1 and 2—$1,563. These figures were supplied to the court by Mr. Gage, vice president of plaintiff, whose knowledge of the facts was not controverted by defendants.

Defendants attack the amount of damages awarded on two grounds:

(1) That plaintiff by terminating a subcontract with the Raven Construction Co., because Raven was going to use laborers on the work in question, was guilty of inducing breach of contract and had "unclean hands" which should deny it the right to seek damages.

(2) That the damages were caused by a shortage of plumbers and not by virtue of the fact that the laborers were off the job from November 12, 1959, to November 29, 1959.

As to defendant's first contention, the trial court in the first aspect of the case (whether the court had jurisdiction to hear the cause and whether defendants were guilty of breach of their collective bargaining contract with plaintiff) found that plaintiff in good faith assigned the work to the plumbers. This determination of the trial court is in accordance with the evidence. The plaintiff, on advice from its labor adviser, believed the work had to be done by plumbers. Since Raven was going to use laborers on this work, plaintiff in good faith had to terminate the subcontract with Raven or else be subject to labor difficulties with the plumbers union.

There is evidence showing that there was machinery in the collective bargaining agreement which was to be used to settle

these jurisdictional disputes; namely, submission of the problem to the National Joint Board for the Settlement of Jurisdictional Disputes. There was no determination ever received by any of the parties from the joint board as to who was supposed to do this work.

The employer who is a signatory to this type of agreement does not act at his peril in selecting one craft or another to do a disputed item of work. The plumbers informed plaintiff that their union had jurisdiction over the work in question. The defendant union felt that the laborers had jurisdiction and struck the job in violation of their contract when plaintiff assigned the work to the plumbers. Plaintiff does not have unclean hands when it, in this situation, in good faith, terminated the Raven subcontract and allowed the plumbers to do the work.

▮▮▮ As stated in *People* v. *Nunn,* 46 Cal.2d 460, 468 [296 P.2d 813] : "The phrase 'good faith' in common usage has a well-defined and generally understood meaning, being ordinarily used to describe that state of mind denoting honesty of purpose, freedom from intention to defraud, and, generally speaking, means being faithful to one's duty or obligation." ▮▮▮ Plaintiff here, after being advised by competent labor personnel, selected the union which it considered was entitled to the work and in that respect it was being faithful to its duty.

▮▮▮ As to defendant's second contention, in its memorandum opinion the trial court stated: "It appears to be the position of defendant that plaintiff is entitled to recover, if at all, only the difference in his direct costs of labor resulting from having plumbers do certain digging and trenching work rather than laborers whose hourly rate of pay is substantially less than that of plumbers. Defendant made no serious effort and offered no satisfactory testimony, either on cross-examination or by his own witnesses, to show that the long delay in finishing the job, and the substantial costs occasioned thereby, to which Mr. Gage testified, had not in fact occurred and been suffered. The court questioned Mr. Gage at some length to determine if perhaps some portion of the additional labor costs might be attributable to factors other than defendant's breach of contract. Mr. Gage's answers to the court questions were convincing and stand unrefuted."

The evidence giving rise to the damages recovered is sub-

stantial and sustains the trial court's determination on the matter. This evidence established that when the pickets appeared at the job because of the jurisdictional dispute, the three laborers who were digging ditches for plaintiff were taken off the job; that in order to get the pipes in so the general contractor could pour his foundation, plaintiff's plumbers had to dig the trenches; that with the plumbers doing laborers' work, a shortage of plumbers on the job developed; that by virtue of this shortage (and plaintiff's inability to get more plumbers to replace the ones digging ditches) the plumbers fell behind the general contractor's schedule, who proceeded on the job; that when the laborers returned to work after the strike the plumbers had a more difficult time installing their pipes because the general contractors passed by the plumbers and proceeded with other work; that this necessitated the plumbers installing the pipes in short pieces instead of in long sections which the general contractors ordinarily then enclose; and that by virtue of this strike of approximately three weeks' duration and by the exceptionally more difficult work of installing the pipes, plaintiff finished the job over five and one-half months later than its scheduled completion date.

It is enough to say that the unavailability of other plumbers to take the place of those plumbers who took the place of laborers was not the direct cause of the delay. There was uncontroverted testimony that the six plumbers on the job could have kept on schedule had the three laborers not been wrongfully removed. Defendants cannot place the causation of the damages on the shortage of plumbers when it was their wrongful act of removing the laborers which gave rise to the shortage of plumbers on the job in the first instance.

The measure of damages used by the trial court is amply supported by substantial evidence in the record. The amount of damages given consists only of the direct expenses of plaintiff resulting from the five and one-half months delay in completing the job. Under the rule of damages stated in section 3300, Civil Code, and in *Ely* v. *Bottini,* 179 Cal.App.2d 287, 294 [3 Cal.Rptr. 756], all of the consequences which are deemed to have been within the contemplation of the parties at the time the contract was executed may be considered in fixing the amount of plaintiff's recovery. Damages stemming directly from a strike with which the collective bargaining contract was concerned and which

contained a "no-strike" clause are clearly within contemplation of the parties. Defendant in no way has rebutted the measure or amount of damages used by the trial court and may not do so now on this appeal.

Judgment for plaintiff is affirmed.

Burke, P. J., and Jefferson, J., concurred.