RALPH G. CASO, Individually and as County Executive of the County of Nassau, et al., Respondents, v. DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO et al., Appellants.

Second Department, December 10, 1973.

*Julius Topol* (*Joan Stern Kiok* of counsel), for Victor Gotbaum and others, appellants.

*Waleck & Cartafalsa* (*Joan Stern Kiok* of counsel), for Barry Feinstein, appellant.

*Joseph Jaspan, County Attorney* (*Natale C. Tedone, Biagio F. Giaquinto* and *James N. Gallagher* of counsel), for respondents.

LATHAM, J. The issue raised on this appeal is whether the " comprehensive plan " of the Taylor Law (Civil Service Law, §§ 200–214), dealing with public employee relations, provides the exclusive remedies against public employees who violate its provisions. The provision here involved is the Taylor Law's flat prohibition of strikes by public employees. The appeal is from so much of an order of the Special Term as denied the defendants' joint motion to dismiss the plaintiffs' second amended complaint for lack of jurisdiction and for failure to state a cause of action.

The instant litigation arose as the result of a planned illegal public employee strike which began in the Borough of Manhattan, City of New York, on June 7, 1971. Involved in the strike were, among others, the defendants, who are the officials and members of a public employees' union which services sewage treatment plants in Manhattan. These officials and members, employees of the City of New York, engaged in a work stoppage, as a result of which, it is alleged in the second amended complaint, approximately one billion gallons of raw sewage were emitted into the waters of the upper East River. The tidal confluence of the East River and the waters of Long Island Sound creates a phenomenon known as a " mixing bowl ", which means that the two bodies of water not only converge but are completely inter-

mingled. Thus, the raw sewage and garbage that were dumped into the waters in Manhattan were dispersed into Long Island Sound, ultimately washing up on the beaches of Nassau County and contaminating the water there.

The plaintiffs, officials of the Towns of North Hempstead and Oyster Bay and of Nassau County, are not the employers of the striking workers. These plaintiffs are suing on behalf of their respective governmental units for the damage done to their waters and beaches. Because the plaintiffs claim that the acts were conspiratorial, malicious and willful, they are suing for actual, compensatory and punitive damages in the amount of $9,000,000, apparently under the common law of nuisance.

The defendants claim that there is no such cause of action, because the Taylor Law not only prohibits strikes by public employees but also provides the exclusive remedies for such strikes. The defendants further assert that the courts have jurisdiction over public employees only as is provided in the Taylor Law, most of the provisions of which allow the courts to intervene only to insure the enforcement of that law by the public officials designated to enforce them.

The Taylor Law provides that public employees and their union may be punished for engaging in a strike, the employees by loss of pay at twice the daily rate of pay for each day's involvement, the union by loss of its " dues check-off " right, and that the strike may be enjoined by the Supreme Court (Civil Service Law, §§ 210, 211). Further, in the event of violation of such an injunction, the striking employees and their union may be punished by fines for contempt of court, and the employees also jailed (Judiciary Law, §§ 750, 751). If persons responsible for obtaining injunctions fail to do so, a proceeding pursuant to article 78 of the CPLR may be brought to compel performance of the duty. Indeed, it should be noted that union employees and the union in the instant case have already been fined almost $1,000,000 for this strike. Thus, these statutes specify how these punishments are to be imposed and by whom.

The Taylor Law reflects the Legislature's attempt to delicately balance the rights of public employees against those of their employers. It was intended to monitor employer-employee relationships and not public employee relations with the public. This much is clear from section 200 of the Civil Service Law, which states the policy of the Taylor Law. The drafters of the bill stated that the Taylor Law provisions " should provide the basis upon which viable government-employee relationships in New York can be developed " (Final Report of Governor's Committee

on Public Employee Relations [Public Papers of Governor Nelson A. Rockefeller, 1966, pp. 877, 883]). Clearly, this law was a response to the unique problems of public employer-employee relations. Just as clearly, it was not intended to govern public employee relations with the general public or others, except as an incident to remedies provided for employers.

The purposes of the Taylor Law and the prohibition against public employee strikes, as well as the general welfare of the public, are best served by permitting appropriate redress for violation of the law. As the defendants readily admit, there is no limit on the amount the employee union may be fined and there is no limit on the period that the union may be deprived of its " dues check-off ". Since the Legislature apparently found that fiscal constraints were appropriate to punish union transgressions, it does not seem that the form, whether fines or damages, is a controlling distinction.

Another factor indicating the intent of the Legislature in enacting the Taylor Law is that, when a remedy was to be exclusive under this statute, the Legislature clearly so stated. For example, paragraph (d) of subdivision 5 of section 205 of the Civil Service Law invests exclusive nondelegable jurisdiction in the Public Employment Relations Board to establish procedures for the presentation of claims of improper employer and employee organization practices (see *Board of Educ., Cent. School Dist. No. 1 of Town of Grand Is.* v. *Helsby*, 37 A D 2d 493, 496). As it applies to the instant case, there is no Taylor Law provision limiting the remedies available against a striking public employees' union. Furthermore, the law has been applied remedially in conjunction with other statutes containing other remedies, again indicating that its remedies were not intended to govern all persons and all relationships involving public employees (see *McCoy* v. *Helsby*, 28 N Y 2d 790; *Local 456 Int. Brotherhood of Teamsters* v. *Town of Cortlandt*, 68 Misc 2d 645).

Read the way the defendants suggest, the Taylor Law would become an impenetrable shield of immunity for public employees who may illegally cause serious damage to persons or parties other than their employer. There is no support for such protection in the statute itself, in the language of the legislative committee which studied the area and drafted the bill, or in reason. Nor is there any wisdom in a decision which puts the " right " of a public union to engage in illegal activities entirely beyond the court's ability to find suitable redress, particularly in the compelling circumstances of the instant case, where the union activities endangered the lives and health of millions

of persons and caused possibly irreparable damage to the environment.

One case merits comment.

In *Jamur Prods. Corp.* v. *Quill* (51 Misc 2d 501), the Supreme Court in New York County refused to allow an action by businessmen injured by the shutdown of the public transportation system during the New York City subway strike of 1966. The situation in the instant case is distinguishable from that in *Jamur.* The conduct here, with the resultant damage, was willful and malicious, while in *Jamur,* decided under the Condon-Wadlin Act, the damage was more tangential, only secondarily causing the damages claimed by the businessmen. The assumption in *Jamur* that the risk of damage in the subway strike was unforeseeable should be rejected, since it is the very inevitability of extensive damage which led to the prohibition of public strikes.

In summary, then, the Taylor Law was not intended to provide the exclusive remedies in the event of a strike by public employees. The statute itself states that it is intended to govern employer-employee relationships for the benefit of the public; it does not indicate that it is intended to immunize public employees from all punishment except that meted out by the chief legal officer of the government involved. It is well settled by the cases that the provisions of the Taylor Law are to be liberally construed to effectuate its purpose (see, e. g., *Matter of Civil Serv. Employees Assn.* v. *Helsby*, 31 A D 2d 325, 330, affd. 24 N Y 2d 993). The purpose of the Taylor Law is, *inter alia,* " to protect the public by assuring, at all times, the orderly and uninterrupted operations and functions of government " (Civil Service Law, § 200). That purpose can best be served by interpreting the Taylor Law provisions as nonexclusive as to remedies against public employees for damages caused by an illegal strike.

A common-law cause of action in nuisance would appear to be the appropriate remedy in the instant case. Of course, the plaintiffs at trial will have to adduce facts to support such a cause of action. The claim itself, however, does represent a cause of action, aside from the sufficiency of the pleadings, which the defendants do not challenge on this appeal.

Thus, we conclude that there is a common-law cause of action in the instant case. The Taylor Law does not contain the exclusive remedies for violation of its provisions; nor does it vest exclusive jurisdiction to provide remedies for wrongs in the officials of the governmental agencies which employ the striking union members. We must reject both of these contentions made

by the defendants and affirm the order of the Special Term insofar as appealed from.

HOPKINS, Acting P. J., GULOTTA and BENJAMIN, JJ., concur.

Order affirmed insofar as appealed from, with $20 costs and disbursements.