[S.F. No. 24946. Oct. 27, 1986.]

CITY AND COUNTY OF SAN FRANCISCO,
Plaintiff and Respondent, v.
UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF
THE PLUMBING AND PIPEFITTING INDUSTRY OF THE UNITED
STATES AND CANADA, LOCAL 38, Defendant and Appellant.

**COUNSEL**

Joseph L. Alioto and Lawrence Alioto for Defendant and Appellant.

George Agnost, City Attorney, Philip S. Ward, Chief Deputy City Attorney, and Steven A. Diaz, Deputy City Attorney, for Plaintiff and Respondent.

**OPINION**

**BROUSSARD, J.**—In *County Sanitation Dist. No. 2* v. *Los Angeles County Employees Assn.* (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835], certiorari denied, — U.S. — [88 L.Ed.2d 359], (hereafter *County Sanitation*), we held that a public employees' strike is illegal only if it poses an imminent threat to public health or safety. (P. 592.) Our opinion specifically reserved the question whether an employer could recover damages

in tort for an illegal strike. (*Id.*, at p. 592, fn. 40.)[1] ■ We address that question today, and conclude that, until the Legislature provides otherwise, the maintenance of an illegal strike is not a tort for which damages may be recovered. We disapprove *Pasadena Unified Sch. Dist.* v. *Pasadena Federation of Teachers* (1977) 72 Cal.App.3d 100 [140 Cal.Rptr. 41] (hereafter *Pasadena*), the only decision in the country to uphold a damage award in such a setting, and the decision on which the trial court relied in awarding $4,080,000 in damages to the City of San Francisco in the present case.

On March 11, 1976, defendant, Local 38 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada, and every other San Francisco building trades union went on strike against plaintiff city. About two weeks after the strike began, the city successfully moved for a preliminary injunction against the striking unions and their leaders. The unions appealed from this order. Before the appeal was decided, the strike settled. The Court of Appeal nevertheless retained the case as one presenting recurrent issues of public importance. (*City and County of San Francisco* v. *Evankovich* (1977) 69 Cal.App.3d 41, 45, fn. 2 [137 Cal.Rptr. 883] (hereafter *Evankovich*).)

The principal issue argued in the *Evankovich* appeal was whether the injunction was affected by the enactment of Code of Civil Procedure section 527.3. The Court of Appeal held that this section, which limits the right of a court to enjoin a strike, was inapplicable to strikes by public employees. (*Evankovich*, pp. 50-53.) Before reaching that issue, however, the Court of Appeal rejected the union's argument that its strike was conduct protected under the First Amendment, stating that "in the absence of an authorizing statute, public employees do not have a right to strike." (Pp. 47-48.) The unions sought to distinguish prior cases on the ground that there was no showing that the strike was violently conducted or induced violence, but the court rejected that distinction, describing the enjoined conduct, picketing and advocacy of a strike against the city, as conduct seeking an unlawful object. (P. 49.) Thus the *Evankovich* court, by clear implication, held the San Francisco strike illegal.

Shortly before the Court of Appeal decision came down, the city filed the present action for tort damages allegedly suffered as a result of the strike. All of the unions except defendant signed consent decrees, agreeing to refrain from engaging in a strike for five years in return for dismissal from the city's tort action.

---

[1]Justice Kaus, joined by Justice Reynoso, expressed the view that the courts should not "embrace the 'solution'" of damage suits as a remedy for public employee strikes. (38 Cal.3d 564, 592 (conc. opn.).)

The case went to trial against defendant. The court instructed the jurors that the strike was illegal, and directed them to find defendant liable if they found that either Local 38 conspired with other labor unions to engage in a public employee strike, or was a concurrent tortfeasor with other labor unions engaged in a public employee strike. Rejecting the union's claim that wages and salaries saved should be set off against damages incurred, the court instructed that damages should be awarded for lost revenues, increased operating expenses, and employee overtime, but that "salaries of striking workers, paid or unpaid, have no bearing on . . . the subject of damages." The jury then returned a verdict for the city of $4,080,000 in compensatory damages. No punitive damages were sought.

Defendant appealed. Before the appeal was decided, we held in *County Sanitation* that public employee strikes were illegal only if they endangered the public health or safety. The Court of Appeal, however, found the union collaterally estopped by the *Evankovich* decision from challenging the finding that the San Francisco strike was illegal. The court then relied on *Pasadena* to uphold the damage award, rejecting the claimed deduction for wages and salaries saved as "inequitable."[2]

The petition for review presented three issues: (1) whether the union is collaterally estopped to deny the asserted illegality of the strike, (2) the availability of damages as a remedy for an illegal strike, and (3) the measure of damages. Our conclusion as to the second issue—that an illegal strike is not, in itself, a sufficient basis for the award of tort damages—is conclusive of the case. We therefore do not decide the issues of collateral estoppel or the measure of damages.

Although many states prohibit public employee strikes generally, and virtually all states prohibit such strikes under certain circumstances (see *County Sanitation*, 38 Cal.3d 564, 569), very few decisions discuss whether such a strike gives rise to a cause of action for damages. *Pasadena* appears to be the only reported appellate decision in the country upholding a damage award to a public employer in the absence of specific legislation authorizing such an award.[3] We therefore begin our discussion with an analysis of that opinion.

The Pasadena Unified School District sought damages against a local teachers' union for loss occasioned by a one-day work stoppage. The trial

[2]The Court of Appeal also decided questions of setoff and jury misconduct which were not raised by the petition for review.

[3]Eight states authorize damage suits by statute. (See Note, *Damage Liability of Public Employee Unions for Illegal Strikes* (1982) 23 B.C.L.Rev. 1087, 1090, fn. 24.)

court upheld the union's demurrer, and the school district appealed. Reversing the judgment, the Court of Appeal first said, in accord with then-current Court of Appeal authority, that public employee strikes were unlawful. It then held that damages could be recovered on either of two theories: (1) "tortious inducement of breach of contract," and (2) "direct liability for harms resulting from unlawful acts." (72 Cal.App.3d 100, 111.)

With regard to the first theory, the Court of Appeal noted that all of the teachers were certificated employees working under contract. Although the contracts contained no explicit prohibition against strikes, the court reasoned that because (in its view) all such strikes would be illegal, the obligation not to strike was an implicit term of the contract. Consequently, it concluded, the allegation that the union induced the teachers to breach this term of their contracts stated a cause of action for damages.

*Pasadena*'s second theory was based upon the principle that "'[t]he law of this state imposes upon everyone the duty "to abstain from injuring the person or property of another, or infringing upon any of his rights." (Civ. Code, § 1708.) There is a breach of such legal duty when one who performs an act not authorized by law . . . causes a substantial material loss to another. That breach constitutes the commission of a tort . . . for which an action in damages will lie.'" (*Pasadena,* 72 Cal.App.3d at p. 112, quoting *Garmon* v. *San Diego Bldg. Trades Council* (1958) 49 Cal.2d 595, 606 [320 P.2d 473].)[4] Since the union aided and abetted an unlawful act causing material injury to the district, the court concluded it was liable in tort.

In the present case, the city does not allege a contractual relationship with the striking workers, or assert a cause of action for tortious interference with contract. The case went to the jury solely on the theory that an illegal strike was tortious per se, and that a union which conspired to strike or aided a strike was a joint tortfeasor liable for damage caused by the strike.

This theory (which cases refer to as a theory of prima facie tort), has been rejected by other jurisdictions. In *Lamphere Sch.* v. *Lamphere Fed.*

---

[4]The quoted *Garmon* decision involved a suit by a nonunion employer seeking injunctive relief and damages against organizational picketing. Our decision held that injunctive relief was preempted by the National Labor Relations Act, but that the employer retained a state right to sue for damages. The United States Supreme Court reversed, holding that state court jurisdiction in cases falling within the NLRB's statutory jurisdiction was limited to strikes and picketing involving violence or threatened violence. (*San Diego Unions* v. *Garmon* (1959) 359 U.S. 236 [3 L.Ed.2d 775, 79 S.Ct. 773].)

Subsequently in *Petri Cleaners, Inc.* v. *Automotive Employees, etc., Local No. 88* (1960) 53 Cal.2d 455 [2 Cal.Rptr. 470, 349 P.2d 76], this court considered whether an employer retained a state cause of action in cases not within the preemptive reach of federal law. Our decision held that organizational picketing did not violate California law, and expressly overruled *Garmon.* (53 Cal.2d at p. 475.)

*of Teachers* (1977) 400 Mich. 104 [252 N.W.2d 818], the Michigan Supreme Court considered a suit by a school district seeking damages from striking teachers and their union. A Michigan statute prohibited public employee strikes, but provided only for injunctive relief, plus discipline or discharge of strikers. The court declined to provide a common law remedy, stating that in "states which have statutes prohibiting public employee strikes, the principle permitting a cause of action in tort for damages has not been *judicially* adopted." (P. 828, italics in original.) In *City of Fairmont* v. *Retail, Wholesale, etc.* (W.Va. 1980) 283 S.E.2d 589, the West Virginia Supreme Court of Appeals reviewed a suit by the city against striking hospital workers. Finding no cause of action, the court rejected the prima facie tort theory of *Pasadena*, and distinguished *Pasadena*'s cause of action for interference with contract on the ground that the hospital workers had no written employment contracts.

The cases involving suits by third parties injured by a strike also reject the theory of prima facie tort. Three decisions have rejected damage suits by businesses harmed by transportation workers' strikes. (*Jamur Productions Corporation* v. *Quill* (1966) 51 Misc.2d 501 [273 N.Y.S.2d 348]; *Burns Jackson Miller etc.* v. *Lindner* (1983) 59 N.Y.2d 314 [451 N.E.2d 459]; *Burke & Thomas, Inc.* v. *Intern. Organization of Masters* (1977) 92 Wn.2d 762 [600 P.2d 1282].) The latter two cases discuss the issue in terms which suggest that the courts would equally reject a suit by the employer. In contrast, the two decisions which have supported recovery rest their reasoning on specific statutes prohibiting the strike in question. *State* v. *Kansas City Firefighters Local 42* (Mo.App. 1984) 672 S.W.2d 99, upheld quasi-contractual recovery by the state after it furnished fire protection during a city firefighters' strike. The decision discussed *Pasadena*, rejected its prima facie tort theory, but suggested that in an appropriate case it would imply from a statute that expressly prohibited public employee strikes a cause of action for breach of contract or tortious interference with contract. *Caso* v. *District Council 37, etc.* (1973) 43 App.Div.2d 159 [350 N.Y.S.2d 173], relied on New York's Taylor Law, which prohibits public employee strikes, to permit neighboring cities to sue for nuisance when a sanitation workers' strike caused pollution of their beaches. In short, the majority of third party cases reject recovery, and those which permit it ground that recovery on a specific statutory prohibition, not upon a theory of prima facie tort.

Our principal objection to *Pasadena*'s prima facie tort theory, however, relates not to the lack of precedential support, but to the relative roles of the courts and the Legislature in establishing rules to govern labor-management relations. The history of the courts in applying common law doctrines to issues of labor law has been an unhappy one. Drawing back from

the prosecutions for criminal conspiracy and the sweeping injunctions of early days, the judiciary has been steadily withdrawing from this field. The first Restatement of Torts, for example, discussed at length the tortious character of illegal strikes (4 Rest., Torts (1939) pp. 91-181); the Restatement Second dismissed the subject with a brief statement that "the law of labor disputes . . . has ceased to be regarded as a part of Tort Law and has become an integral part of the general subject of Labor Law, with all of its statutory and administrative regulations" (4 Rest.2d Torts (1977) p. 2).

Parallel to this withdrawal of judicial remedies has been a steady growth of statutory and administrative regulation. California teachers are now governed by the Education Employment Relations Act (Gov. Code, § 3540 et seq.); we recently held that the authority of the Public Employment Relations Board under this act to adjudicate unfair labor practices preempts superior court jurisdiction to award damages for an unlawful strike. (*El Rancho Unified School Dist.* v. *National Education Assn.* (1983) 33 Cal.3d 946 [192 Cal.Rptr. 123, 663 P.2d 893].) State employees are governed by the similar State Employer-Employee Relations Act (Gov. Code, § 3512 et seq.), which also vests authority to adjudicate unfair labor practice claims in the Public Employment Relations Board. Most local employees fall within the scope of the Meyers-Milias-Brown Act (Gov. Code, § 3500 et seq.), which contains various provisions for the resolution of labor disputes.[5] Other local employees are covered by local charters, ordinances and regulations which provide methods of resolving controversies. There remain today relatively few cases in which the imposition of a judicial remedy of tort damages would not impinge directly upon an established administrative mechanism for resolving disputes between a public employer and its employees. The possible scope of a damage remedy has been so greatly narrowed that one senses that it would be fundamentally unfair to hold a few public employee unions liable for damage awards when teachers' unions, state employee unions, and many local employee unions would not be liable for the same conduct.

In *City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898 [120 Cal.Rptr. 707, 534 P.2d 403], we observed that "[t]he question as to what sanctions should appropriately be imposed on public employees who engage in illegal strike activity is a complex one which, in itself, raises significant issues of public policy. In the past, several states have attempted to deter public employee strikes by imposing mandatory, draconian statutory

---

[5]San Francisco city employees are subject to the Meyers-Milias-Brown Act, but only to the extent that its provisions are not inconsistent with the city charter. (See *Building Material & Construction Teamsters' Union, Local 216* v. *Farrell* (1986) 41 Cal.3d 651 [224 Cal.Rptr. 688, 715 P.2d 648].)

sanctions on striking employees; experience has all too frequently demonstrated, however, that such harsh, automatic sanctions do not prevent strikes but instead are counterproductive, exacerbating employer-employee friction and prolonging work stoppages." (P. 917, fns. omitted.)

Our opinion in *County Sanitation* sounded the same theme of judicial restraint, observing that the policy questions involved in public employee strikes "are highly debatable, and best left to the legislative branch in the first instance." (38 Cal.3d at p. 591, fn. 39.) Justice Kaus, concurring, applied this theme to the question of damages, concluding that "[i]n the absence of a determination by the Legislature that a tort action, resulting in a money damage award determined by a jury many years after the strike, is the appropriate method for dealing with public employee strikes, I do not believe the judiciary should, on its own, embrace this 'solution' to the problem." (P. 592.)

The courts of other states agree. The Michigan Supreme Court, in rejecting a damage suit against a teachers' union, said that "the ultimate legislative goal is to achieve a prompt, fair resolution of disputes while avoiding the disruption of the educational process. To recognize alternative tort remedies would result in a substantial negative impact upon such purposes. It would encourage future school board inaction. Eventual settlements could be prolonged pending the resolution of multiple tort claims and counterclaims. The inevitable result would be to create labor law logjams in our courts and, at the same time, to exacerbate labor-management disputes." (*Lamphere Sch.* v. *Lamphere Fed. of Teachers, supra,* 252 N.W.2d 818, 830.)

The West Virginia Supreme Court of Appeals noted that "in most other states the legislature has made an effort to make some statutory accommodations to the labor relation problems that exist in the public sector. Indeed, it was the initial inability of the courts to judicially resolve the competing interests of private employees and private employers that led to federal legislation in the labor law field. Most if not all commentators in the labor law area agree that the complex issues in this field are ill suited to any comprehensive judicial solution." (*City of Fairmont* v. *Retail, Wholesale, etc., supra,* 283 S.E.2d 589, 595.)

And the Washington Supreme Court observed that "[i]nherent in the doctrine of judicial restraint is a recognition that the delicate balance of labor relations is now primarily the province of the legislature." (*Burke & Thomas, Inc.* v. *Intern. Organization of Masters, supra,* 600 P.2d 1282, 1288.) It concluded that "all factors considered, . . . in view of the delicate

balance to be sought in public employee labor relations, and of the Legislature's active role in regulating this process, that in the absence of a legislatively created cause of action for damages sustained by third parties, a rule of judicial restraint regarding recognition of a new cause of action for damages in favor of third parties is the appropriate rule to be followed at this time." (P. 1290.) As that court recognized (see p. 1289), the same reasoning would bar a damage action by the employer.

Those who argue in favor of a tort remedy assert that it will deter illegal strikes. (*State* v. *Kansas City Firefighters Local No. 42, supra,* 672 S.W.2d 99, 110; Note, *op. cit. supra,* 23 B.C.L.Rev. 1087.) The deterrent effect, however, varies inversely with the strength of the union, and the threat of damages may prolong any strike which does occur. The striking union, in negotiating a settlement, will have to consider that the employer can bring a suit for enormous damages—often far more than the union treasury—at any time before the tort statute of limitations runs. The only sensible course of action for the union is to insist, as a term of any settlement, that the employer waive its right to tort damages, and to prolong any strike until the employer agrees. Thus only the weakest unions, whose strikes may fail utterly, will be deterred by the threat of a destructive damage award; the stronger unions will face little risk. The cause of action thus may have a destabilizing effect, prolonging public employee strikes and exacerbating inequalities in bargaining power. "'[T]o allow damage suits by the employer against the union. . ., far from promoting a balance of bargaining between the parties, would probably only aggravate any existing imbalance. In situations in which the union possesses the preponderance of power, the employer would be unlikely to invoke the damage remedy for fear of exacerbating relations; and when the employer holds the power, the availability of such a further remedy would merely increase his advantage.'" (*Lamphere Sch.* v. *Lamphere Fed. of Teachers, supra,* 252 N.W.2d 818, 831, quoting Comment, *Collective Bargaining for Public Employees and the Prevention of Strikes in the Public Sector* (1969) 68 Mich.L.Rev. 260, 293.)

In sum, *Pasadena*'s prima facie tort theory was unsupported by prior precedent from any jurisdiction, and has been rejected by all subsequent decisions. It stands alone in opposition to the steadily growing recognition that judicial intervention to weight the bargaining balance in favor of public employers, by threatening to impose ruinous judgments on unions, is not a desirable or workable method of dealing with public employee strikes.

We therefore disapprove the *Pasadena* court's holding that an illegal strike is prima facie grounds for recovery in tort. The selection of remedies for an illegal strike is, we believe, a matter for the Legislature, and in the

absence of legislative authorization courts should not draw upon common law precedent to create a right to sue for damages.

We do not preclude all damage actions by employers. An employer will retain the right to sue for breach of an explicit no-strike clause.[6] (See Labor Management Relations Act, § 301, 29 U.S.C. § 185(a); *A.I. Gage Plumbing Supply Co.* v. *Local 300 of Internat. Hod Carriers* (1962) 202 Cal.App.2d 197 [20 Cal.Rptr. 860].) It may also sue for tortious acts occurring during the conduct of a strike. (See *United Workers* v. *Laburnum Corp.* (1954) 347 U.S. 656 [98 L.Ed. 1025, 74 S.Ct. 833]; *Fibreboard Paper Products Corp.* v. *East Bay Union of Machinists* (1964) 227 Cal.App.2d 675 [39 Cal.Rptr. 64].) We hold only that, until the Legislature enacts to the contrary, the illegality of a strike without more is not grounds for a damage suit by the employer.

The judgment of the Court of Appeal is reversed.

Bird, C. J., Mosk, J., Reynoso, J., Panelli, J., and Feinberg (Sidney), J.,* concurred.

**LUCAS, J.**—I respectfully dissent. In *County Sanitation Dist. No. 2* v. *Los Angeles County Employees Assn.* (1985) 38 Cal.3d 564 [214 Cal.Rptr. 424, 699 P.2d 835], my colleagues held that, except in limited cases presenting an "imminent threat" to public health or safety, public employees now have a right to strike in this state. I dissented, observing that this holding was contrary to the federal rule and to the vast majority of cases in other states; indeed, until *County Sanitation,* it was well established in California that *all* public strikes were illegal. (*Id.* at p. 610 [dis. opn.].) The fact that at least *nine* California appellate decisions (cited in my dissent) had so ruled, and that no statutes were enacted to change that rule, indicated to me a legislative acquiescence therein. The majority held otherwise.

Now the majority holds that even if a strike was unlawful (posing the requisite "imminent threat" to public health or safety), affected public agencies are limited to their injunctive or administrative remedies and may not sue to recover the financial losses proximately caused by the strikers'

---

[6]We reject, however, the reasoning of *Pasadena* that a clause prohibiting illegal strikes is implicit in every public employee contract. The conduct of the parties to this action demonstrates the contrary. After *Evankovich* held the city employee strike illegal, and before *County Sanitation* cast doubt upon that holding, the city nevertheless agreed to dismiss its lawsuit against unions which would agree to an explicit five-year no-strike provision.

*Retired Associate Justice, Court of Appeal, First District, Division Three, assigned by the Chairperson of the Judicial Council.

unlawful conduct. This decision is again contrary to accepted California law. (See *Pasadena Unified Sch. Dist.* v. *Pasadena Federation of Teachers* (1977) 72 Cal.App.3d 100, 111-114 [140 Cal.Rptr. 41] [hg. den.].) As the Court of Appeal observed in the present case, "It is established in California that public employee unions which engage in strikes are liable for the damages which are thereby proximately caused to a municipal employer." Not anymore.

*Pasadena's* principal theory for sustaining damage awards for unlawful public strikes was quite elementary, and quite irrefutable: An unlawful strike is no different than any other *tort* which proximately causes injury. In *upholding* a damage award against a striking union, we stated nearly 30 years ago that, "The law of this state imposes upon everyone the duty 'to abstain from injuring the person or property of another, or infringing upon any of his rights.' (Civ. Code, § 1708.) There is a breach of such legal duty when one who performs an act not authorized by law infringes upon a right another is entitled to enjoy, or causes a substantial material loss to another. That breach constitutes the commission of a tort, under the laws of this state, for which an action in damages will lie. . . . It is further established in this state that by an unlawful and unauthorized labor practice an employer who is damaged thereby may recover damages in a tort action." (*Garmon* v. *San Diego Bldg. Trades Council* (1958) 49 Cal.2d 595, 606 [320 P.2d 473].)

The majority disapproves *Pasadena, supra,* 72 Cal.App.3d 160. Do my colleagues also disapprove the general tort principles noted in *Garmon, supra,* 49 Cal.2d 595, and abrogate section 1708 of the Civil Code? Ironically, the majority claims that its "principal objection" to *Pasadena* relates to "the relative roles of the courts and the Legislature in establishing rules to govern labor-management relations." (*Ante,* p. 815.) The majority explains that it is quite reluctant to tamper or interfere with legislative treatment of public strike issues. But the majority's reliance upon principles of "judicial restraint" rings particularly hollow in light of its abrogation of the long-standing California rule, which had been acquiesced in by the Legislature, forbidding *all* public strikes. Where was the majority's "restraint" in 1985, when it decided *County Sanitation?*

The fact remains that unlawful public strikes (which, by the majority's own definition, pose "imminent threats" to public health or safety) can result in devastating financial injury to the affected municipality. To deprive public agencies of their right to recompense for such unlawful conduct, a right enjoyed by all other persons in the absence of *statutory* limitation, is

not only unsound and shortsighted, but also constitutes unprecedented discrimination against California municipalities.

I would affirm the judgment of the Court of Appeal.