**Loretta WHITE, et al., Appellants,**

v.

**INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 42, et al., Respondents.**

**No. WD 38963.**

Missouri Court of Appeals, Western District.

Oct. 27, 1987.

Michael L. Fortin, Kansas City, for appellants.

Joseph W. Moreland, Michael T. Manley, Kansas City, for respondents.

Before TURNAGE, P.J., and BERREY and GAITAN, JJ.

BERREY, Judge.

Plaintiffs, Loretta White and Charles A. White, brought suit against the International Association of Firefighters, AFL–CIO, Local 42 of the International Association of Firefighters, eight (8) named individuals who were union officers or representatives of Local 42 and "John Doe 1–8–70," for property damage sustained during a fire fighters' strike or work stoppage against Kansas City, Missouri. The trial court granted the defendants' motion to dismiss for failure to state a claim on which relief could be granted. Plaintiffs' contend the trial court erred in granting defendants' dismissal because a private citi-

zen may maintain a cause of action under a theory of intentional tort against the fire fighters' union for damages occurring during an illegal strike by public employees. The judgment of the trial court is affirmed.

Plaintiffs' petition, framed in two counts, alleges in Count I that on March 17, 1980, the defendants began a strike and refused to respond to fire alarms or calls; established picket lines to hinder the City's normal operations; engaged in acts of sabotage against the City's fire fighting equipment and facilities; and that these actions were in violation of § 105.530 RSMo 1978, the prohibition against public employee strikes. It was further alleged that on March 20, 1980, a fire was discovered on plaintiffs' property located at 4003 Prospect and with the inexperienced personnel and inadequate equipment available, the fire was not brought under control and totally destroyed their real and personal property. Plaintiffs contend that had defendants "been performing the duties for which they were employed, the fire could have been brought under control with inconsequential damages to the premises and its contents." Count II of plaintiffs' petition incorporates the allegations of Count I and asserts defendants' actions established the tort of outrage.

In determining whether the trial court erred in dismissing plaintiffs' petition, this court must decide if plaintiffs' allegations invoke principles of substantive law which may entitle them to relief. *Enyeart v. Shelter Mutual Insurance Co.*, 693 S.W.2d 120, 124 (Mo.App.1985). Plaintiffs draw upon the principles set forth in this court's decision in *State v. Kansas City Firefighters Local 42*, 672 S.W.2d 99 (Mo. App.1984), in support of their assertion that a private citizen has a cause of action for damages intentionally inflicted by the firefighters who failed to perform their duty in providing firefighting services.

This court's decision in *Kansas City Firefighters, supra,* a lodestone for legal commentary, *see* Note, Illegal Public Employee Strikes: Allowing a Civil Suit for Damages, 33 UMKC L.Rev. 299 (1985), and *Note,* Prima Facie Tort—a Judicial Reac-

tion to Public Employee Strikes in Missouri, 50 Mo.L.Rev. 687 (1985), held that a public employer could maintain a cause of action, implied by the state statute prohibiting public employees strikes, under the theory of intentional tort for damages it incurred during an illegal public employee firefighters strike. *Id.* at 116. There, on October 3, 1975, after long unsuccessful negotiations with the City on the issue of remuneration, the firefighters' union struck the City and union members failed to report for firefighter duty. With the City in a critical situation, the Governor of the State, ordered the state militia into emergency duty. The strike ended on October 7, 1975, after the state had incurred $128,782.72 in expenses for the militia's services during this period. The State, in its amended petition,[1] pled for recovery in tort for reimbursement of those expenses. *Id.* at 104.

The *Kansas City Firefighters* court relying on the doctrine of implied rights as set forth in Restatement (Second) § 874(A), found the policy behind the Public Sector Law precluding public employee strikes § 105.530, that is, to "ensure the uninterrupted delivery of services vital to the public welfare," would be furthered by allowing a civil remedy for damages sustained during an illegal strike. *Id.* at 109–110. The court found the function of the firefighters was indispensible to public safety but confined the scope of liability to extend to only these public employees on the basis it refused to exercise its judicial power in this "delicate area of public employment." The court's decision was further restricted to those cases where it is pleaded and proven that the action intended to produce the resulting harm, or that the result was a natural and probable consequence of the intended act—requirements for the claim of an intentional tort.

The court, in its analysis of the implied cause of action, acknowledged another limitation: "the suitor must be a member of the class for whose especial benefit the

statute was enacted." *Id.* at 110. The *Kansas City Firefighters'* court stated that the Public Sector Law was enacted for the benefit of the public body or the public employer and found the State—who provided the essential services—succeeded to the rights and remedies of the City and was the public employer, or intended beneficiary, for the purposes of the action. In this regard, the court did not further describe other potential beneficiaries but specifically stated, ["w]e need not, and do not, decide whether the policy of the Public Sector Labor Law benefits a third party other than the public employer." *Id.* at 110.

Whether a cause of action inures (beyond the public employer) to third party has been examined in only a few jurisdictions, *Boyle v. Anderson Fire Fighters Association,* 497 N.E.2d 1073 (Ind.App. 2 Dist. 1986); *Burke & Thomas, Inc. v. International Organization of Masters,* 92 Wash. 2d 762, 600 P.2d 1282 (banc 1979); *Jamur Productions Corp. v. Quill,* 51 Misc.2d 501, 273 N.Y.S.2d 348 (N.Y.Sup.Ct.1966); *Caso v. District Council 37,* 43 A.D.2d 159, 350 N.Y.S.2d 173 (N.Y.Sup.Ct.1973); *Burns Jackson Miller, ETC v. Linder,* 59 N.Y.2d 314, 464 N.Y.S.2d 712, 451 N.E.2d 459 (N.Y.Ct.App.1983); *Fulenwider v. Firefighters Association Local Union 1784,* 649 S.W.2d 268 (Tenn.1982). Two of the decisions have allowed private citizens to maintain damage actions, one under a nuisance theory; *Caso v. District Council 37, supra,* 350 N.Y.S.2d at 178; and the other under an intentional tort theory, *Boyle v. Anderson Fire Fighters Association Local 1262, supra,* 497 N.E.2d at 1079–83. While these two cases rest upon different theories of recovery, both decisions tend to focus upon the same policy consideration: the public's need to have uninterrupted essential governmental services which, if suspended, would have the potential of endangering the health and welfare of the people. In *Caso v. District*

---

**1.** An earlier action was brought by the State on a quasi-contractual theory. This court in *State ex rel. Danforth v. Kansas City Firefighters Local 42,* 585 S.W.2d 94 (Mo.App.1979), found the union was not liable under contractual theory but remanded the cause for further proceedings based on its allegations of tortious conduct.

*Council 37, supra,* the court found New York's Taylor Law involving public employee relations was to be liberally construed to effectuate its purpose and that remedies, beyond those set forth in the statute, were not precluded. Thus, the Caso court found a common law nuisance action against striking sewage plant employees could be maintained. *Caso v. District Council 37, supra,* 350 N.Y.S.2d at 178. In *Boyle v. Anderson Fire Fighters Association Local 1262, supra,* 497 N.E.2d at 1081, the court, relying heavily on the decision in *Caso* and this court's decision in *Kansas City Fire Fighters, supra,* found the Anderson City's Fire Department acknowledged in its rules and regulations that it had a duty to protect the lives and property of its citizenry and that the labor agreement with the union expressly recognized this duty. Thus, the *Boyle* court concluded the fire fighters had an affirmative ministerial duty to property owners to fight the fire and that the firefighters wilfully and wantonly failed to do so in reckless disregard of the consequences. *Id.*

The cases refusing to allow private causes of action present equally diverse analysis in reaching their conclusions. In *Jamur v. Quill, supra,* 273 N.Y.S.2d at 352–353, the New York Supreme Court held it would not imply an action because the legislature failed to expressly or implicitly provide for a cause of action and thus, refused to allow a damage suit against New York public transit workers who illegally struck. The *Jamur* court, citing to *Schmidt v. Merchants Despatch Transportation Co.,* 270 N.Y. 287, 305, 200 N.E. 824, 829, 104 A.L.R. 450 (1936), stated that "[w]hen the statute merely defines, in the interest of the general public, the degree of care which shall be exercised under specified circumstances, it does not 'create' a new liability." The Supreme Court of Washington in *Burke & Thomas, Inc. v. International Organization of Masters, supra,* 600 P.2d at 1289, similarly refused to allow a private damage action against public ferry workers who illegally struck the city under a theory of tortious inference of business relationships. The court found that the careful balancing of public

employment would be disturbed and the function of the State Public Employment Relations Commission, which is to resolve labor disputes, would be effectively usurped. *Id.* In *Burns Jackson Miller, etc. v. Lindner, supra,* 451 N.E.2d at 466, the New York Court of Appeals found the Taylor Law, previously dealt with in *Caso v. District Council 37, ASCME, supra,* 350 N.Y.S.2d at 179, did not give rise to an *implied private cause of action* because such implication is inconsistent with one of the primary purposes of the legislation: the elimination of tensions in public employer-employee relations and the maintenance of labor peace. The court noted that the Taylor Law, undergoing many amendments, including creating a Public Employment Relations Board, from the time *Caso, supra,* was decided, revealed an intent to protect the labor union's demise. *Id.* 451 N.E.2d at 466. And finally, the Supreme Court in Tennessee in *Fulenwider v. Firefighters Association Local Union 1784, supra,* 649 S.W.2d at 272, found a private action for damages against a fire fighters union and its members could not be maintained where there was no allegation of wilful or even negligent destruction of property by direct action. The court stated the claim was based only upon " 'secondary' or incidental harm as a by-product of the work stoppage." *Id.*

These cases disclose that regardless of the theories upon which the action is brought, that is, common law tort, breach of contract or statutory implied rights doctrine, the courts weigh competing policy considerations that exist between the public's need for vital governmental services and the need for harmony in public employment relations. As noted in *Kansas City Firefighters,* one of the requirements of the doctrine of implied rights is that the purpose of the Public Sector Law be furthered by the allowance of a civil cause of action. *State v. Kansas City Firefighters Local 42, supra,* 672 S.W.2d at 109. The *Kansas City Firefighters* court determined a damage suit by a public employer would further one of the primary policies of the Public Sector Law, the uninterruption of

essential governmental services, a policy consideration relied on in other jurisdictions to justify other theories of recovery against Unions who participate in illegal work stoppages. The *Kansas City Firefighters* court, however, recognized (although in a footnote) "the other cognate, primary policy of the statute is to vouchsafe to public employees a means to acquit the right conferred by the United States and Missouri Constitutions of peaceable assembly and to petition for redress of grievances." *Id.*

One cannot doubt that the potential for numerous private civil actions would be an influencing factor in the firefighters' decision to strike and may effectively curtail further walkouts. As one commentator noted, however, "[a]ctions by third parties for wrongful death or destruction of valuable property ... are more likely to threaten the existence of a union than suits for compensation for replacement labor such as *K.C. Firefighters.* This is due to the potentially greater number and virtually unlimited monetary risk involved in the former type of suit." Blackwood, *Illegal Public Employee Strikes: Allowing Civil Suit for Damages,* 53 UMKC L.Rev. 299, 309 (1985). The possibility of financial collapse of the union by large damage verdicts may also be antagnostic toward the City providing continued firefighting services. First, individual firefighters could be subject to unlimited liability under the doctrine of virtual representation, *Helton v. Hake,* 564

S.W.2d 313, 322 (Mo.App.1978), and although firefighters who do not assent to strike will not be held responsible, *State v. Kansas City Firefighters Local 42, supra,* 672 S.W.2d at 125, this potential for liability may prevent competent persons from pursuing careers as firefighters. Secondly, the bargaining process between the City and the Union could be stymied:

> It need hardly be said that indemnification for tort liability would or could quickly become a subject for bargaining which every public employee union would or could insist upon as clause in its contract thus creating costly burdens to one or another of the parties thereby complicating further the bargaining process.

*Burke v. Thomas, Inc. v. International Organization of Masters, supra,* 600 P.2d at 1290; *see also Lamphere Schools v. Lamphere Federation of Teachers,* 400 Mich. 104, 131, 252 N.W.2d 818, 830, 84 A.L.R.3d 314 (1977); and *City and County of San Francisco v. Local 38,* 42 Cal.3d 810, 230 Cal.Rptr. 856, 726 P.2d 538 (1986).[2] It is not hard to imagine a scenario whereby a strike is prolonged, with the possibility of liability incurring, because of the union's insistence upon indemnifications from tort actions like the one sub judice.

■ The decision to foreclose plaintiffs' right to sue is further buttressed by the Kansas City Firefighters court's analysis of the implied rights doctrine in which there is a limitation that "the suitor must be a member of the class for whose espe-

---

**2.** This recent decision by the California Supreme Court which held an illegal public employee strike was not a tort for which damages could be recovered, the court reversed the decision of *Pasadena Unified School District v. Pasadena Federation of Teachers,* 72 Cal.App.3d 100, 140 Cal.Rptr. 41 (1977), discussed in *Kansas City Firefighters,* and stated:

> Those who argue in favor of a tort remedy assert that it will deter illegal strikes. The deterrent effect, however, varies inversely with the strength of the union, and the threat of damages may prolong any strike which does occur. The striking union, in negotiating a settlement, will have to consider that the employer can bring a suit for enormous damages—often far more than the union treasury —at any time before the tort statute of limitations runs. The only sensible course of action for the union is to insist, as a term of any

settlement, that the employer waive its right to tort damages, and to prolong any strike until the employer agrees. Thus only the weakest unions, whose strikes may fail utterly, will be deterred by the threat of a destructive damage award; the stronger unions will face little risk. The cause of action thus may have a destabilizing effect, prolonging public employee strikes and exacerbating inequalities in bargaining power.

*City and County of San Francisco v. Local 38, supra,* 230 Cal.Rptr. at 861, 726 P.2d 538. The *City and County of San Francisco* court also discussed the holding in *Kansas City Firefighters.* It *incorrectly* stated that this court found liability to the public employer based upon quasi-contractual recovery. *See State ex rel. Danforth v. Kansas City Firefighters Local 42, supra,* note 1.

**938**

cial benefit the statute was enacted." *Id.* at 110. The court stated that the Public Sector law was enacted for the benefit of the *public body* or public employer, and found that the State, who provided the replacement labor, succeeded to the rights and remedies of the City, and was the public employer, the intended beneficiary, for the purposes of the action. We note that in *Burke and Thomas, Inc. v. International Organization of Masters, supra,* 600 P.2d at 1286, the court stated "the primary function of [a] strike ... is usually as a tool to gain bargaining leverage during contract negotiations with the employer. The object of the work stoppage is typically not to injure any third party, but rather to apply pressure to the employer...." Under § 105.500 RSMo 1986, "public body" is defined as "the state of Missouri, or any officer, agency, department, bureau, division, board or commission of the state, or any other political subdivision of or within the state." These entities listed are those likely to engage in the bargaining process with public employees and be the direct recipients of the leverage mechanism, the strike. Thus, the intended beneficiaries of the Public Sector Law are not, individuals like the plaintiffs, but governmental instrumentalities.

In this same vein, we note that public officers are not liable to individuals for injuries or damages for the failure to carry out those duties which are owed to the general public. *Lawhon v. City of Smithville,* 715 S.W.2d 300, 302 (Mo.App.1986); *Berger v. City of University City,* 676 S.W.2d 39, 41 (Mo.App.1984). In *Lawhon v. City of Smithville, supra,* 715 S.W.2d at 302, this court acknowledged that a municipal fire department is fashioned for the benefit of the entire community and that no cause of action accrues to an individual based on a breach of duty for failure to perform services due to the public at large. It should be noted that plaintiffs' petition did not allege that the union (or its members) started the fire at plaintiffs' home or did any specific acts which prevented the personnel who responded to the call from combating the fire. Such acts go beyond the protection of the public duty doctrine.

*See Berger v. City of University City, supra,* 676 S.W.2d at 42.

For the foregoing reasons, this court affirms the trial court's order dismissing plaintiffs' petition.

All concur.